COLLIER v. POSTUM CEREAL CO., Limited.

(Supreme Court, Appellate Division, First Department.   April 4, 1912.)

**1. LIBEL AND SLANDER (§ 100*)—EVIDENCE—ADMISSIBILITY.**

Where plaintiff's published article charged only that defendant made lying advertisements of its food products as obviating the necessity of an operation for appendicitis, and as indorsed by a distinguished physician, it cannot, by its evidence, in an action for libel for defendant's reply publication, that plaintiff's charges were mendacious falsehoods, and published to compel defendant to advertise in plaintiff's magazine, make a general attack on defendant's food products and business methods, but it can prove only the truth of the specific charges of the provoking article; and this, though the answer averred, by way of innuendo, that plaintiff charged defendant with being dishonest in its business methods, and guilty of deceit and lying in its business, and in advertising and selling its products, this meaning that defendant was charged with dishonesty, lying, and deceit in the particular respects referred to in plaintiff's article.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 246–272; Dec. Dig. § 100.*]

**2. PARTNERSHIP (§ 199*)—LIBEL—RIGHT OF RECOVERY.**

Where an article libels both a partnership and its members individually, damages to the partnership must be recovered by the partners jointly, and damages to the partners individually by them separately.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 362–368; Dec. Dig. § 199.*]

**3. PARTNERSHIP (§ 216*)—ACTION—PARTIES—STATUTES.**

It does not follow from the fact alleged in the complaint and admitted by the answer that defendant is a copartnership association organized and existing under and by virtue of the laws of Michigan, that it was organized under Comp. Laws Mich. 1897, c. 160, and so, under section 6088, suable in its association name, rather than a partnership, consisting of general and special partners, organized under chapter 159, and thereunder suable in the names of its general partners; but proof thereof is necessary.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 416–418; Dec. Dig. § 216.*]

**4. LIBEL AND SLANDER (§§ 104, 107*)—EVIDENCE OF OTHER PUBLICATIONS.**

Where an action for libel is only for a publication in a certain county, evidence of separate publications of the article in various papers throughout the state, each of which could be the subject of a separate action, is not admissible on the question of damages, but only on the question of malice, and that only where it is necessary to prove actual malice to rebut a claim of privilege.

[Ed. Note.—For other cases. see Libel and Slander, Cent. Dig. §§ 281–291, 299–303, 305; Dec. Dig. §§ 104, 107.*]

**5. LIBEL AND SLANDER (§ 104*)—PRIVILEGE.**

Defendant's alleged libelous article, stating that plaintiff's charges were mendacious falsehoods, and were made for the purpose of compelling defendant to advertise in plaintiff's magazine, being provoked by plaintiff's article, charging that defendant made lying advertisements of its food products as obviating necessity for an operation for appendicitis, and as being indorsed by a distinguished physician, is presumptively privileged, so that plaintiff, as hearing on the question of actual malice, may show publications other than that sued for of the alleged libel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 284–291; Dec. Dig. § 104.*]

Laughlin and Dowling, JJ., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

On motion for reargument, or to certify questions to the Court of Appeals. Denied.

For former opinion, see 133 N. Y. Supp. 852.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

MILLER, J. [1] The dissenting opinion shows that none of the reasons urged in support of the judgment or now urged in support of the motion for reargument escaped the attention of the court, and manifestly in the present state of this case it would be improper to certify questions to the Court of Appeals. It appears, however, that the writer of the prevailing opinion sacrificed clarity to brevity. At any rate, counsel seem not to understand what the court decided and request us to clear up the point, and to state our views on the questions discussed in the dissenting opinion.

The precise and only point decided was that it was prejudicial error to allow the plaintiff to make a general attack upon the food products and business methods of the defendant, and whatever else may have been said in the opinion was intended only to show the harmful character of the evidence erroneously admitted. We construe the provoking article as making the two specific charges which we quoted. What was said in introduction about deception in advertising, in so far as it related to the defendant, was limited by said specific charges; and the concluding part of the article, so far from making those charges broader, really limited them by pointing out that by the style of advertising thus specifically described the defendant was causing its food products, which should sell on their merits, to be classed in the public mind with patent medicines and thereby was alienating patronage that it might otherwise receive. We construe the replying article, the alleged libel, as characterizing the specific charges quoted by it, as "rank out and out falsehoods," "mendacious falsehoods," and as charging, in so far as it related to the plaintiff individually, that the provoking article was published because the defendant would not advertise in Collier's Weekly at its own prices and upon its own conditions, and for the purpose of forcing money from the defendant by compelling it to advertise. The plaintiff was not defending a suit for libel, and it was not for him to justify a general charge of dishonesty, even if he had made one against the defendant. He could prove the falsity of the defendant's charge by proving the truth of what the defendant charged to be false, but his evidence on that head should have been limited to the said specific charges. Whilst the defendant averred in its answer by way of innuendo that the plaintiff charged it with being "dishonest in its business methods" and "guilty of deceit and lying in its business and in advertising and selling its products," etc., that averment construed with reference to the quotation to which it referred meant that the defendant was charged with dishonesty, lying, and deceit in the particular respects referred to. Certainly no one would contend that it justified proof—e. g., that the defendant used false weights or had defrauded its creditors—and a mass of the evidence improperly received was just as irrelevant to the specific charges.

Counsel do not specify the points upon which they desire an expression of the views of the court. There were perhaps four questions, not touched upon in the prevailing opinion, which, if necessary to the decision or likely to arise upon a new trial, merited discussion, viz.: (1) The question of privilege; (2) the question as to the alleged error in refusing to charge that the plaintiff could not recover damages for any injuries to Collier's Weekly; (3) the question whether there was really any defendant in court; (4) the question as to the alleged error in the admission of evidence of 44 separate publications in the state of New York.

1. We did not pass upon the first question, for the reason that the plaintiff tried the case on the theory that the alleged publication was presumptively privileged, and argued in the brief submitted to this court that, the facts upon which the claim of privilege rested being in dispute, the question was for the jury. However, on a new trial, the plaintiff may take the view expressed in the dissenting opinion, and, if we are to undertake the task of outlining our views on the questions in the case before they arise, we may as well do it thoroughly. I shall discuss the question under the fourth head, with which it is related.

[2] 2. We did not discuss the second question, for the reason that counsel defended the refusal to charge on the ground that the request was not germane to any issue in the case, because the plaintiff had not undertaken to recover damages for injury to his interest in Collier's Weekly. But, inasmuch as we do not agree with the view expressed in the dissenting opinion, that the plaintiff is entitled to recover in this suit damages for such injuries, a brief statement of our views may save a repetition of the error on a new trial. The cases cited (Tobin v. Best Company, 120 App. Div. 387, 105 N. Y. Supp. 294; Rosenwald v. Hammerstein, 12 Daly, 377; Constitution Publishing Company v. Way, 94 Ga. 120, 21 S. E. 139; Willis v. Jones, 13 App. D. C. 482) do hold that where a defamatory article libels both a copartnership and its members individually—in other words, when it is libelous per se—the individuals may sue separately for their individual damages, but they do not hold that each may recover in separate suits the damages caused to him "as a member of the firm," though there is an expression in the per curiam memorandum in Tobin v. Best Company, supra, which may seem to support that view. The question arose in that case on a demurrer to a complaint based on an article which the court held to be libelous per se. Upon that view the demurrer was properly overruled, because the case was one in which the partners jointly and each separately could maintain actions, but the statement that each separately could recover damages for injury to his interest in the copartnership was dictum, and the citation in support of it (18 Am. & Eng. Ency. of Law [2d Ed.] 1055, 1056) shows that it was inadvertent. The statement therein on the subject is:

"It is not, however, necessary that partners against or concerning whom words actionable per se have been uttered or published should join in seeking their remedy, for one partner may in a separate suit recover whatever

damages have been caused to him by the libel or slander; *but he cannot recover for any special damage which has resulted to the firm as such.*" (Italics are mine.)

The part in italics is supported by the cases cited in the marginal note, particularly Robinson v. Marchant, 53 E. C. L. 918. Also see Harrison v. Bevington, 34 E. C. L. 975. There is no distinction in principle as far as this question is concerned between general and special damages. Of course, if special damages only are recoverable, the individual partners cannot maintain separate suits at all, for the reason that in such case the libel would not affect them as individuals. The cases cited in the minority opinion show that it is the rule that partners suing jointly cannot recover for damages sustained by each individually. We think that the converse of that proposition holds good, and that the true rule is that the damages to the copartnership must be recovered by the partners jointly, and that damages to the partners individually must be recovered by the partners separately; otherwise, it would be necessary to have a partnership accounting in a libel suit, and we can perceive no reason for making a distinction, as far as the point under consideration is concerned, between actions for libel and those for other torts or even for breach of contract.

[3] 3. With respect to the third point, there is a defect in the proof, which we assumed was due to the fact that counsel was taken by surprise at the trial, but which a majority of us thought was so palpable that it was unnecessary to point it out to able counsel. We do not agree with the view expressed in the minority opinion that the defendant was shown to be a corporation. Of course, if that be true, there is a variance between the pleadings and the proof. The complaint alleged, and the answer admitted, that the defendant is "a copartnership association duly organized and existing under and by virtue of the laws of the state of Michigan." Despite that averment, the plaintiff's counsel took the position on the trial that the defendant was a corporation, but no amendment of the complaint was asked or granted. On the appeal it was argued that the defendant is a "corporate entity," if that be something different from a corporation. Certain sections of the Constitution and of the statutes of the state of Michigan were put in evidence. The material provision of the Constitution (article 12, § 2, Const. 1908) is:

"The term 'corporation' as used in this article shall be construed to include 'all associations' and joint-stock companies having any of the powers or privileges of corporations not possessed by individuals or partnerships."

The material provision of the section of the statute put in evidence (chapter 160, § 10 [section 6088, Compiled Laws 1897]) is:

"That all real estate owned or purchased by any association, created under and by virtue of this act shall be held and conveyance thereof shall be made in the association name; that said association shall sue and be sued in their association name. * * *"

But the plaintiff failed to prove that the defendant was organized under that act. An examination of chapters 159 and 160 of the Compiled Laws of 1907 of the state of Michigan discloses a scheme for the organizing of (1) partnerships, consisting of general and special

partners, suits by or against which must be prosecuted in the names of the general partners, and (2) limited partnership associations, partaking of the nature of corporations, which should sue and be sued in their association names. Those statutes are not all in evidence, and I refer to them only to point out the defect in the plaintiff's proof. It did not follow from the fact that the defendant is a partnership association, organized and existing under and by virtue of the laws of the state of Michigan, that it was organized under said chapter 160.

[4] 4. The complaint charged that the article was published in the "county and state of New York." The plaintiff was permitted over objection and exception to prove the separate publication of the article in a large number of papers throughout the state of New York, the manner of publication, and the circulation of the newspapers. That evidence was offered on the theory that all the publications constituted a single libel, and for the avowed purpose of showing the extent of the publication; i. e., the extent of the injury. It was decided by this court in this department in a case involving the sending of an article by a news agency to newspapers that the transmission of the article to the different papers constituted one publication, for which the news agency alone was liable, that the separate publication of the article in each newspaper constituted a distinct libel for which the newspaper publishing it and the news agency were liable as joint tort-feasors, and that the recovery and satisfaction of a judgment against the news agency for the original publication did not bar subsequent actions for each separate publication by the different newspapers. Union Associated Press v. Heath, 49 App. Div. 247, 63 N. Y. Supp. 96. Vide the cases cited in the opinion. I do not say that the plaintiff could not recover in a single action upon an appropriate pleading all the damages caused by the defendant. The plaintiff complained only of a publication in the county and state of New York, and we are informed by counsel on oral argument that a large number of suits are now pending between the parties hereto for different publications of the article in question. It was manifestly error of the most prejudicial character to admit evidence of the manner and extent of publications not complained of. If such a ruling were allowed to pass, the plaintiff could recover in each of as many suits as he saw fit to bring all of the damages caused by all of the acts separately complained of. The evidence of other publications was admissible, if at all, only to prove actual malice.

It is quite generally stated by text-writers, and there are many dicta in judicial opinions to the effect, that it is permissible to prove the publication of the same or similar words either before or after the publication complained of. As an independent proposition any evidence is relevant which tends to show actual malice, but, if the plaintiff is allowed to prove publications which might be the subject of other suits, the practical result will be a double recovery, for it is well recognized that it is not humanly possible for a jury, no matter how plainly instructed, to put out of their minds the effect of other publications in estimating damages. The conflict between the principle and its practical effect has resulted in much confusion on the subject. There was for some time in England a lack of uniformity

in the rulings at nisi prius, evidence being received in some instances and rejected in others under apparently similar circumstances. But the judges frequently declared that evidence of publications which might be the subject of other actions would not be received for the sole purpose of enhancing damages. See Stuart v. Lovell, 2 Starkie, 93; Defries v. Davis, 7 Car. & Payne, 112; Pearce v. Ornsby, 1 M. & Rob. 455. In 1843 the Court of Common Pleas decided that such evidence was admissible, if properly guarded by instructions to the jury, but Tindal, C. J., said: "And, if such evidence is offered merely for the purpose of obtaining damages for such subsequent injury, it will be properly rejected"—though he stated the principle to be that evidence showing the spirit and intention of the party publishing the libel was competent to be considered by the jury in estimating the injury done to the plaintiff, overlooking the fact that the Court of King's Bench had decided, as is now recognized to be the law, that the natural tendency of the defamatory words to injure, not the intention of the defendant, was to be considered in estimating the extent of the injury. Haire v. Wilson, 9 Barn. & Cress. 643. In 1851 the House of Lords decided that the publication of previous libels by the defendant against the plaintiff was admissible to show actual malice, but the decision was expressly put upon the ground that the evidence was admissible under a plea, under St. 6 and 7 Vict. c. 96, denying actual malice, and stating the publication of an apology. Barrett v. Long, 3 House of Lord Cases, 395.

The decisions in this state appear to be equally inconclusive on the precise point. In Inman v. Foster, 8 Wend. 603, it was decided in deference to authority that evidence could be given of slanderous words spoken more than two years before suit brought; i. e., words which could not be the subject of a separate suit. In Root v. Lowndes, 6 Hill, 518, 41 Am. Dec. 762, it was held that evidence could not be given of actionable words not laid in the declaration; the court, per Bronson, J., saying that evidence of the repetition of the slander might be given for the reason that the judgment would be a bar to another action. That case was followed in Howard v. Sexton, 4 N. Y. 157, the court per Gardiner, J., suggesting that such evidence would be admissible if it were necessary to prove actual malice or to explain equivocal words. Inman v. Foster, supra, was followed by the commissioners of appeal in Titus v. Sumner, 44 N. Y. 266, but upon the express ground that the statute of limitations would be a defense to the prior slander. In Frazier v. McCloskey, 60 N. Y. 337, 19 Am. Rep. 193, it was held that the evidence of the repetition of the slander after suit brought was not admissible to prove malice; the court, per Rapallo, J., saying: "The plaintiff should never be permitted to give in evidence words which might be the subject of another action." In Distin v. Rose, 69 N. Y. 122, it was held that evidence of the repetition of the slanderous words before suit was admissible both to show the motive of the defendant and the extent of the injury, evidently on the theory that the judgment would bar another action. In Daly v. Byrne, 77 N. Y. 182, the court held that the admission of evidence of a repetition of the words after suit brought was not ground for reversal; no proper objection having been

taken. The foregoing were all slander suits. In Cassidy v. Brooklyn Daily Eagle, 138 N. Y. 239, 33 N. E. 1038, the rule is stated to be that evidence of the same or similar words spoken before the commencement of the suit may be given, but the point was not involved. I think the fair rule, and the one to be adduced from the cases, is that evidence of publications which might be the subject of other actions should not be received for the sole purpose of enhancing damages. In cases in which the law implies malice the plaintiff does not need to prove actual malice as he will recover his compensatory damages without such proof, and, if he be allowed to give evidence of a publication which might be the subject of another suit, for the sole purpose of recovering punitive damages, the practical result will be a double recovery. However, if it be necessary to prove actual malice —e. g., to rebut a claim of privilege—any evidence legitimately bearing on that question ought to be received, even though it might be the subject of another action.

[5] Was the article complained of presumptively privileged? There can be no doubt that the occasion was privileged. The general rule is stated in Ashcroft v. Hammond, 197 N. Y. 488, 90 N. E. 1117. The defendant had the right to repel the attack upon it and to retort upon its assailant, in case such retort was a necessary part of its defense or fairly arose out of the charges made against it. Odgers on Libel and Slander, 228. The defendant plainly had the right to characterize the plaintiff's charges as false, and mere vehemence, even exaggerated statement, will not as matter of law destroy the privilege or necessarily present a question of fact (Taylor v. Hawkins, 20 L. J. [N. S.] Q. B. 313; Spill v. Maule, L. R. 4 Ex. 232; Laughton v. The Bishop of Sodor and Man., L. R. 4 Privy Council Appeals, 495; Dwyer v. Esmonds, L. R. 2 Ir. 243), though, of course, the language of a retort may be so intemperate or violent as to be of itself evidence of malice. The important question is whether the defendant had the right to impugn the motives of its assailant, if it did so honestly without malice and for the sole purpose of repelling the assault upon it, and not with the view of injuring the plaintiff. One who makes a public attack upon another subjects his own motives to discussion. It is a contradiction in terms to say that the one attacked is privileged only to speak the truth, and not to make a counter attack, or that legitimate self-defense consists only in a denial of the charge or a statement of what is claimed to be the truth respecting its subject-matter. One in self-defense is not confined to parrying the thrusts of his assailant. Of course, the counter attack must not be unrelated to the charge, but surely the motives of the one making it are pertinent. The plaintiff selected the forum for the dispute, and in that forum it would certainly tend to repel or minimize the harmful tendency of the charges to show that the one making them was actuated by an improper motive.

The case of Koenig v. Ritchie, 3 F. & F. 413, most nearly resembles this of any I have found. The plaintiff in that case had published a pamphlet accusing the defendants of fraud. They published a counter pamphlet, in which, among other things, they charged the plaintiff with having sworn in a suit in support of the charges subsequently made

in his pamphlet "in opposition to his own handwriting." Cockburn, C. J., submitted the question to the jury whether the publication went beyond the occasion, and in his charge said:

"I own I cannot feel much sympathy for a man who, having been the first to make an appeal to public opinion, when he is answered in the same manner by a counter appeal, changes the tribunal which he has himself selected, and invokes the arm of the law."

In Klinck v. Colby, 46 N. Y. 427–434, 7 Am. Rep. 360, it is said:

"Though defamatory comments on the motives or conduct of another do not fall within that rule"—citing Tuson v. Evans, 12 Ad. & El. 733.

The rule referred to was the right in the transaction of business with another to use language relative to that business. The charge held to be privileged in Klinck v. Colby was that the defendants had been "robbed and swindled" by the plaintiff and others. Tuson v. Evans was expressly overruled in Cooke v. Wildes, 5 Ell. & Bl. Q. B. 328. In that case the defendant on a privileged occasion had attacked the character and conduct of the plaintiffs, and in effect had charged them with an attempt at extortion. Lord Campbell rules at nisi prius on the authority of Tuson v. Evans that the defendant had exceeded the privilege, but in reviewing the case he held that that was error, and in the judgment of the court delivered by him the rule was stated to be that evidence of malice, either extrinsic or intrinsic, presented a question for the jury alone. See, also, Cowles v. Potts, 34 L. J. Q. B. 247.

We think, therefore, that the plaintiff's trial counsel was right in thinking that the alleged libelous article was presumptively privileged, and that the burden was on the plaintiff to prove both falsity and actual malice. We shall not discuss the evidence bearing on those questions further than to say that we think they were plainly questions for the jury. Of course, the language of the article and the extent of its publication were elements to be considered on the question of malice. The plaintiff should, therefore, be permitted to show in how many and in what papers the article was published. He should not, however, be permitted to give evidence bearing exclusively upon the extent of the injury caused by other publications, and the jury should be instructed that the evidence could only be considered on the question of actual malice, and not at all to enhance the damage, and that the other publications, not complained of in this suit, were the subject of other suits, which would not be barred by the satisfaction of any judgment recovered in this.

The motion should be denied, with $10 costs.

INGRAHAM, P. J., and SCOTT, J., concur. LAUGHLIN and DOWLING, JJ., dissent.