John P. Donohoe, J.
The defendant herein moves for an order granting three forms of relief as follows: (1) dismissing the first and second causes of action alleged in the complaint, upon the grounds that such causes of action for libel, based on an article published in the April, 1963 issue of Consumer Reports were not commenced within the time limited by law, namely, within one year after the cause of action accrued, as required by CPLR 215 (subd. 3). Said motion is granted. (2) Dismissing the third and fourth purported causes of action alleged in the *915 complaint, upon the grounds that they fail to state a cause of action, in that they improperly split and fragmentize into two purported causes of action what is in law and in fact a single cause of action, contrary to the rule against splitting a single cause of action is granted, with leave to the plaintiff to amend its complaint and serve a copy of its amended complaint within 10 days after service of a copy of the order made hereunder with notice of entry, if it be so advised. Said motion is granted. (3) In the event permission is granted plaintiff to properly replead the allegations contained in the third and fourth causes of action as a single cause of action, striking out therefrom all allegations which incorporate by reference Exhibit “A” of the complaint, to wit, the April, 1963 issue of Consumer Reports, inasmuch as all of the utterances contained in such Exhibit “ A ” were published outside of the applicable Statute of Limitations. Said motion is denied.
In this action for libel, plaintiff is a manufacturer of certain electronic or radio equipment and, pertinent to the matter in issue, an antenna which it allegedly advertised as very useful in obtaining frequency modulated transmissions. The defendant, a membership corporation, is a research and testing concern which publishes a periodical called 11 Consumers Reports ”, in which it allegedly published two reports, one in April, 1963, and one in December, 1963, defamatory to the plaintiff’s FM antenna.
The defendant moves first for a dismissal of the first two causes of action on the ground that they are barred by the Statute of Limitations. The action was commenced on April 27, 1964. Defendant has produced as an exhibit on this motion a letter written by the president of the plaintiff which shows conclusively that the plaintiff had received a copy of the April, 1963 edition complained of sometime before April 2, 1963. It appears, in fact, that distribution was made to some newsstands as early as March 6, 1963. In the light of these facts, the commencement of the action on April 27 was not timely and the first two causes of action are barred. (CPLR 215, subd. 3; Gregoire v. Putnam’s Sons, 298 N. Y. 119; National Cancer Hosp. of America v. Confidential, Inc., 151 N. Y. S. 2d 443.)
In December, 1963, the defendant published an article which appeared as follows:
“ Antenna: fm, indoor with amplifier
“ The Gallo FMS Model 101 FM Antenna System (Gallo Electronics Corporation, New Rochelle, N. Y.), $29.95, is in a 6x3x1 inch black plastic case. The case holds a tiny antenna printed on a circuit board and a transistorized, power-line-operated amplifier for strengthening the FM signals picked up by the *916 antenna. It is intended to be used indoors within a foot or two of the FM receiver. Advertising for the Gallo antenna has included the outright claim that it ‘ * * * produces signals right across the FM band that far exceed the best roof-top antenna. ’
“ In CU’s tests the Gallo did not match, much less outdo, a good roof-top antenna (Consumer Reports, April 1963). FM owners and especially FM stereo owners, who need an antenna that can pull in relatively weak signals and that can discriminate against reflected (multipath) signals that cause distortion and loss of stereo effect, will not be able to use the non-directional, relatively insensitive Gallo antenna — they will still need a good roof-top model. The Gallo proved to be roughly equivalent, for strong, reflection-free signals, to an indoor dipole made from TV transmission line, which costs about a dollar, or to a powerline antenna, which costs nothing.”
The quoted publication is the subject of the third and fourth causes of action in the complaint.
In the third cause of action, plaintiff’s main thrust is that the publication injured the plaintiff in its credit and reputation and brought about the loss of many sales of its product, to its damage in the sum of $136,814.63. The complaint incorporates a list of lost sales and the values thereof.
In the fourth cause of action, plaintiff’s main thrust is that the publication was intended to and did publicly charge that the plaintiff knowingly manufactured and offered for sale an article which was dangerous, deceptive and valueless, to its damage in the sum of $2,500,000.
Plaintiff claims that the causes are separately pleaded because there is a distinction between defamation of the product and defamation of its manufacturer. Plaintiff is then faced with a principle which appears to run contrary to its theory of pleading. Clearly, it has been a rule for some time that a single act of publication gives rise to a single libel, and the publication may not be split or fragmentized into separate items of wrong so as to permit pleading of separate causes of action. Such is the substance of defendant’s contention of this motion. (See Kern v. News Syndicate Co., 6 A D 2d 404; Crosby v. Rockland County Citizens Pub. Co., 232 N. Y. S. 2d 819.) Plaintiff contends, on the other hand, that this is not a case of separate wrongs flowing from the same publication, but of the separate impact of the single act upon the product and upon its manufacturer. Plaintiff cites Marlin Fire Arms Co. v. Shields (171 N. Y. 384); Maglio v. New York Herald Co. (83 App. Div. 44) and others in support of the proposition that a cause of action exists on behalf of a *917 manufacturer for defamation of its product upon showing malice and special damage as well as the falsity of the criticism. It cites Samson United Corp. v. Dover Mfg. Co. (233 App. Div. 155); Harwood Pharmacal Co. v. National Broadcasting Co. (9 N Y 2d 460) for the proposition that a cause of action exists for defamation of the manufacturer as contrasted with defamation of its product. It cites Drug Research Corp. v. Curtis Pub. Co. (7 N Y 2d 435) as authority for the rule that a libel of the plaintiff’s product is not necessarily a libel of the plaintiff. That statement of the law was set forth in the Drug Research Corp. case in its relationship to dismissal of a cause of action for product defamation for failure to allege special damage. Such expression of the law is not authority for splitting a single cause of action, however.
The crux of the matter appears to be, not that separate wrongs were committed, giving rise to separate causes of action, but that damage of different kinds resulted, that is, the special damage arising from loss of sales of the defamed product and the general damage growing out of the scar upon the manufacturer’s reputation. While no authority directly in point is found, the situation is analogous to that in Manko v. City of Buffalo (294 N. Y. 109), wherein plaintiff sought to plead a single statutory cause of action as two separate causes, one for loss of salary and one for legal expense in asserting his remedy. The court held (p. 111) there that “ By dividing the damage one cannot divide a single cause of action ”. The principle applies here with equal force and requires dismissal of the separate causes of action.
The dismissal is granted with leave to replead. It is noted, however, that in addition to the objectionable splitting which has been discussed, plaintiff incorporated in the third and fourth causes of action the publication of March, 1963, with respect to which dismissal is granted by reason of the limitation of time.
Plaintiff maintains that it may offer the earlier publication to show the malice of the defendant, citing Titus v. Sumner (44 N. Y. 266); Collier v. Postum Cereal Co. (150 App. Div. 169) and others. The Collier case is indicative of the rule, there expressed (p. 175), that “ it is permissible to prove the publication of the same or similar words either before or after the publication complained of.” The court went on to point out the difference between the principle and its practical effect. The question here is whether the April, 1963, publication is purely one of admissibility into evidence or is one of pleading as well. This court holds that it is a question of pleading.
The publication of December, 1963, could stand on its own with respect to any defamatory effect it might have. Nevertheless, it *918 is not wholly separate from the publication of April, 1963, because the latter article made specific reference to the former. This is deemed an enlargement of the libel, and as such, the earlier publication must be pleaded. (Cassidy v. Brooklyn Daily Eagle, 138 N. Y. 239, 243.) The situation is distinguished from that in Burkan v. Musical Courier Co. (141 App. Div. 202), wherein the pleaded libels were items solely indicative of malice and not of enlargement by reference.