Nathaniel T. Helman, J.
This is a motion by defendant Epton to dismiss the complaint for failure to state a cause of action.
Plaintiff is a Police Lieutenant in the New York City Police Department. He avers that on July 16, 1964, while off duty and in civilian clothes, at East 76th Street, in the Borough of Manhattan, City of New York, he heard a commotion on the street; that he saw the deceased with an open blade pursuing a person running into a building; that he identified himself as a Police Lieutenant, flashing his badge and revolver; that deceased came after him with a knife in his hands; that he advised him to stop and fired a warning shot, but the deceased kept coming; then, in self-defense, he fired his revolver, killing the deceased.
The complaint alleges plaintiff enjoyed an outstanding and excellent reputation and good character; that defendants since in or about July, 1964, conspired and maliciously and willfully participated in a plan and course of action designed to defame *213 and injure the plaintiff in his good name and reputation, in his profession as a policeman; to destroy his income and livelihood and to remove plaintiff as a police officer of the New York City Police Department; that on or about July 18, 1964, the defendant Harlem Defense Council published, and upon information and belief the other defendants participated in, the preparation and publication of a false, scandalous, derogatory, infamous, malicious and libelous article, poster or handbill, of and concerning plaintiff.
The said poster is alleged to be a picture of plaintiff in a police uniform, above which are the words: “ Wanted for Murder”, and underneath the picture plaintiff is identified as 1 ‘ Gfilligan, the cop ’ ’, followed by the words ‘ ‘ Lieut. Thomas G-illigan of the 14th Division.” Underneath is printed Harlem Defense Council with an address and telephone number.
The complaint further alleges that the words “Wanted for Murder ”, were published by defendants with reason to believe the same to be false and with actual malice toward plaintiff, pursuant to a previously existing policy on the part of defendants and with the intent and for the purpose of exposing plaintiff to hatred, contempt, ridicule and aversion and to injure and dishonor him both as a man and as a policeman; and that the publication intended to convey that plaintiff had committed the crime of murder; that defendants wrongfully, negligently and carelessly failed and omitted to make investigation as to the truth of said statement.
The moving defendant contends that the complaint should be dismissed because the First and Fourteenth Amendments to the United States Constitution prohibit this libel action brought by a public official against critics of his official conduct; that defendant has a right under the Constitution of the United States to criticize the official conduct of public officials on tlie basis of the facts available to him as a member of the public; that under the circumstances herein, he claims he is entitled to publish criticism which he believes to be true, whether or not it can be proved true.
Defendant relies mainly on New York Times Co. v. Sullivan (376 U. S. 254) in support of his position. In that case, the New York Times published an editorial advertisement communicating information, expressing opinion, reciting grievances, protesting claimed abuses, and seeking financial support on behalf of the Negro right-to-vote movement and the Negro student movement. Sullivan, an elected Commissioner of the City of Montgomery, Alabama, brought a civil libel action against the New York Times and others and recovered a sub *214 stantial verdict against defendants therein, which was affirmed by the Supreme Court of Alabama, and the United States Supreme Court granted certiorari. The United States Supreme Court reversed the judgment stating inter alia:
‘ ‘ We hold that the rule of law applied by the Alabama courts is constitutionally deficient for failure to provide the safeguards for freedom of speech and of the press that are required by the First and Fourteenth Amendments in a libel action brought by a public official against critics of his official conduct ” (p. 264). * * *
“ The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ‘ actual malice ’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not ” (pp. 279-280). * * *
“We hold today that the Constitution delimits a State’s power to award damages for libel in actions brought by public officials against critics of their official conduct. Since this is such an action, the rule requiring proof of actual malice is applicable ” (p. 283).
As to who is a public official, the Supreme Court was careful to point out:
“We have no occasion here to determine how far down into the lower ranks of governmental employees the ‘ public official ’ designation would extend for purposes of this rule, or otherwise to specify categories of persons who would or would not be included. # * * Nor need we here determine the boundaries of the ‘ official conduct ’ concept. It is enough for the present case that respondent’s position as an elected city commissioner clearly made him a public official, and that the allegations in the advertisement concerned what was allegedy his official conduct as Commissioner in charge of the Police Department ” (p. 283, n. 23).
Decisions of our local courts which have dealt with defamation of “ public officials ” have shown a trend toward liberality in the extension of the doctrine of the Times case to persons not actually holding office. The reluctance of our highest court to define “public official” or to fix the boundaries of “ official conduct” has resulted in forecasts of a “further erosion of the protection heretofore given by the law of defamation ” so as to embrace all persons within the public arena. (Pauling v. News Syndicate Co., 335 F. 2d 659, 671 [C. A. 2d].) In supporting the view that the Times doctrine should be broad *215 ened to include candidates for office, the court there said: “ Once that extension was made, the participant in public-debate on an issue of grave public concern would be next in line In Bingham v. Buckley (N. Y. L. J., Aug. 4, 1964, p. 9, col. 2 [Dickens, J.]) the principle of the Times case was applied to a candidate for Congress. And in Gilberg v. Goffi (21 A D 2d 517) the doctrine was extended to an action brought by the law partner of the Mayor, who was a candidate. An interesting criticism of the trend toward expansion of the Sullivan doctrine by a leading authority on the Law of Libel and Slander, Ernest P. Seelman, appears in the New York Law Journal (Sept. 27-Oct. 1, 1965, inclusive).
Plaintiff argues, however, that he is not a “ public official ” within the meaning of the Times decision. He is not an elected official, nor even a candidate for election; he is not a governmental executive charged with responsibility in administering public affairs. He chooses to regard himself, together with thousands of other governmental employees, as “in the lower ranks of government employees.” But the title of the office and the function it normally serves are not the only criteria for the determination of the extent of the qualified privilege. The relation of the alleged libel to his “ official conduct ”, and the public interest or concern in the publication, are matters upon which the court placed great emphasis.
Newspaper, television and radio reports published immediately after the incident stated that plaintiff, a police officer, weighing 200 pounds, 6 feet tall, who had been cited several times for disarming men with guns, had, while off duty, shot and killed a 15-year-old boy of slight build. Defendant, a leader amongst groups of citizens concerned with the establishing of a Civilian Review Board to hear citizens’ complaints against police officers, and concerned particularly with a proposed recommendation that off-duty policemen be denied the right to carry guns, was frequently engaged in discussion and debate on these subjects.
While a qualified privilege does not protect statements about every person employed by an agency of government, the rationale of the Times opinion was that the privilege would be extended to a debate on “ public issues ”, designed to bring about “political and social changes desired by the people.” The new constitutional definition of libel commanded by the First Amendment and applied to the States through the Fourteenth Amendment was based on the principle that “ delation public issues should be uninhibited, robust, and wide-open. ’ ’ Throughout the opinion emphasis is placed on “ public dis *216 eussion”, “free political discussion ”, “ public questions”, “public institutions”, “so that the Government may be responsive to the wishes of the people ” (pp. 269, 270, 274, 276).
In a strictly literal sense the occupant of a governmental position, even of a minor nature, is a public official. Recently the Appellate Division of this Department authorized a pretrial examination in support of a defense predicated on the Times case, where the “ public official ” was an Assistant Corporation Counsel of the City of New York (Schneph v. New York Times Co., 22 A D 2d 641). In other jurisdictions statements about a policeman (Lafferty v. Houlihan, 81 N. H. 67), and an investigator for the District Attorney (Jones v. Express Pub. Co., 87 Cal. App. 246) have been held conditionally privileged. The court in the Times case was careful to point out (p. 283) that communications by a government employee are at least qualifiedly privileged, and a “ fair equivalent of the immunity granted ” is to establish a corresponding immunity for citizens’ statements about officials (Barr v. Matteo, 360 U. S. 564, 573-575). “ It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted” that provides the privilege (New York Times v. Sullivan, 376 U. S. 254, 273). Under the circumstances here disclosed, application of the constitutional ruling in the Times case to plaintiff as a “public official” is appropriate.
Assuming, however, that plaintiff is a “ public official ”, the issue of actual malice herein should be determined at the trial. ‘ ‘ The general rule is that in the case of a libelous publication the law implies malice and infers some damage ” (Bingham v. Gaynor, 203 N. Y. 27, 31).
However, where publication is presumptively privileged, no action in libel will lie unless such a publication was motivated by actual malice and was false (Shapiro v. Health Ins. Plan, 7 N Y 2d 56; Ashcroft v. Hammond, 197 N. Y. 488).
It has been held that actual malice may be inferred from the language and tenor of the libelous statement or the extent or excessiveness of the publication thereof (Moyle v. Franz, 267 App. Div. 423, affd. 293 N. Y. 842; Hamilton v. Eno, 81 N. Y. 116, 124; Collier v. Postum Cereal Co., 150 App. Div. 169; Pecue v. West, 233 N. Y. 316).
Plaintiff charges that these posters were circulated and published while an official investigation of the incident was being conducted by the Police Review Board and the Grand Jury. The posters themselves, their design and construction, the placing of the words complained of above the picture of plaintiff *217 in uniform — these are all subjects for factual interpretation on the issues of actual malice and fair comment (Mencher v. Chesley, 297 N. Y. 94; Hoeppner v. Dunkirk Print. Co., 254 N. Y. 95, 105). In the circumstances herein, the dismissal of the complaint is not warranted. Accordingly, the motion is denied.