GEORGE THEODORE STARR, SR.

*v.*

BECKLEY NEWSPAPERS CORPORATION,

*a corporation*

(CC886)

Submitted October 9, 1973.    Decided January 22, 1974.

*D. Grove Moler* for plaintiff.

*Lynch, Mann & Knapp, G. Berk Lynch* for defendant.

CAPLAN, CHIEF JUSTICE:

This case is before the Court on certification from the Circuit Court of Wyoming County. The plaintiff, George Theodore Starr, instituted a libel action in the aforesaid circuit court wherein he sought to recover from the defendant, Beckley Newspapers Corporation, compensatory damages in the sum of $50,000.00 and punitive damages in the sum of $25,000.00. Subsequent to the filing of an amended complaint and answer thereto and the taking of depositions, the defendant filed a motion for summary judgment, the principal ground therefor being that the plaintiff was a public figure within the meaning of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686, and that there was no justiciable issue that the alleged libel was published by the defendant with actual malice.

The Circuit Court of Wyoming County, by order entered on February 28, 1973, overruled said motion and upon the request of both parties certified the following question to this Court:

> "Do the First and Fourteenth Amendments to the United States Constitution require the plaintiff to prove actual malice, as defined in *New York Times v. Sullivan,* 376 U.S. 254, and subsequent cases, under all of the facts and circumstances disclosed on the face of the pleadings and exhibits in this case?"

The plaintiff, George Theodore Starr, Sr., on June 13, 1968 and for many years prior thereto, had been a police officer of the City of Beckley, the last three years thereof having maintained the rank of sergeant. He alleged in his amended complaint that he was a person of good character and had always been a law-abiding citizen. The Beckley Newspapers Corporation is engaged in the business of publishing a daily newspaper, The Raleigh Register. This newspaper was and is now distributed, published and circulated in the area and counties surrounding the City of Beckley, including Raleigh, Wyoming, Fayette, Greenbrier, Boone, Mercer, Monroe, Nicholas and Summers Counties in the State of West Virginia.

According to an allegation in the complaint, the defendant, Beckley Newspapers Corporation, on June 13, 1968 published The Raleigh Register which included as an item the following:

CITY POLICE SERGEANT LODGED IN JAIL ON BAD CHECK CHARGES

"Ted Starr, Jr., 110 Glenn Ave., City Police sergeant, was lodged in the Raleigh County Jail at 10 P.M. Wednesday on bad check warrants issued by Town District Magistrate Joe Rodriguez. He was released on bond at 1:30 a.m. today. The checks written include: King Tut, $10; Super X, $20; Humphrey's Esso, $16; and two checks at the Raleigh County Bank written for 'cash' in the amount of $9.30 and $10."

After a number of copies of the edition containing the above item was printed and placed into circulation a reporter who regularly reports police matters discovered that the above news item was incorrect. Thereupon the presses were stopped and the story was changed to read as follows:

CITY POLICE SERGEANT'S SON JAILED ON BAD CHECK CHARGES

"Ted Starr, Jr. 110 Glenn Avenue, son of City Police Sergeant Ted Starr, was lodged in the Raleigh County Jail at 10 p.m. Wednesday

on bad check warrants issued by Town District Magistrate Joe Rodriguez. He was released on bond at 1:30 a.m. today.

The checks written include: King Tut, $10; Super X, $20; Humphrey's Esso, $16; and two checks at the Raleigh County Bank written for 'cash' in the amount of $9.30 and $10."

Approximately 11,000 copies of this edition, a part of which contained the first story, were published and circulated as aforesaid.

It is alleged in the complaint, and it is undisputed, that Jane Ann McCoy, now Jane Ann McCoy Hambric, then a student at Marshall University, was, on June 13, 1968, in the employ of the defendant newspaper as a summer interne reporter. In that capacity she was assigned on that day to cover the "police beat". In the performance of this assignment she was unaccompanied by any veteran reporter. Pursuant to her duties as a reporter Miss McCoy had occasion to observe the jail record commonly referred to as the "police blotter" and noted thereon the name of Ted Starr, Jr., who was charged with the criminal offense of issuing bad checks. According to her deposition she recalled that a Ted Starr was a member of the police department and without making any inquiry or checking as to the identity of the name on the "police blotter" returned to the newspaper office and wrote the story first quoted above. Before submitting her story for publication she handed it to the city editor for approval. Some remarks passed between the city editor and Miss McCoy as to the correctness of the story and without any further inquiry as to the correctness of the identity of the subject of said story it was published and circulated. The city editor in fact not only approved the story but wrote the headline. Of further significance, the interne reporter did call city hall to ascertain the rank of Ted Starr, the acknowledged reason therefor being that the story would be of greater news value if the subject were a police sergeant.

In these circumstances, alleges the plaintiff, the subject newspaper story was published by the defendant willfully, wantonly, recklessly, carelessly and maliciously. It is acknowledged by all parties that the story as originally published was false in that the charge reported by Jane Ann McCoy accused Ted Starr, Jr. of the offense and not the plaintiff, Ted Starr, Sr. There is no evidence which would refute the deposition testimony that Ted Starr, Sr., plaintiff, was an exemplary citizen and that he had never been charged with any crime. It is further charged in the complaint that the subject story was published with reckless disregard as to whether it was true or false.

In its answer the defendant, while denying several allegations of the complaint, admits that the story it originally published and circulated was false. As an affirmative defense it contends that inasmuch as the words complained of were published without malice and the words are not libelous per se that it is protected by the First and Fourteenth Amendments to the Constitution of the United States as set out in *New York Times Co. v. Sullivan, supra.* Basically, this defense forms the grounds for the defendant's motion for summary judgment.

The sole issue presented by the certified question is whether, under the facts and circumstances disclosed by the pleadings and exhibits in this case, the plaintiff, a police sergeant, is a public official within the contemplation of *New York Times Co. v. Sullivan, supra,* and by reason thereof required to prove actual malice.

In *St. Amant v. Thompson,* 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968), a deputy sheriff instituted an action for libel alleging that he was falsely charged with criminal conduct. The Court therein held that Thompson, the deputy sheriff, was a public official and that he was therefore obligated to prove that the defamatory statements "were made with actual malice as defined in New York Times Co. v. Sullivan and later cases." In accord, see *Scelfo v. Rutgers University,* 116 N.J. Super. 403, 282

A.2d 445 (1971), wherein the court held: "Plaintiffs, two municipal policemen whose powers are constitutionally and statutorily derived, are 'public officials' and as such fall squarely within the 'actual malice' requirement of New York Times Co. v. Sullivan, *supra.*" See also *Time, Inc. v. Pape,* 401 U.S. 279, 28 L. Ed. 2d 45, 91 S. Ct. 633 (1971); *Gilligan v. King,* 48 Misc. 2d 212, 264 N.Y.S.2d 309 (1965); *Suchomel v. Suburban Life Newspapers, Inc.* 84 Ill. App. 2d 239, 228 N.E.2d 172 (1967); *Ashton v. Commonwealth,* (Ky.) 405 S.W.2d 562 (1965); *Jackson v. Filliben,* (Del.) 281 A.2d 604 (1971); *Coursey v. Greater Niles Tp. Publishing Corp.,* 40 Ill. 2d 257, 239 N.E.2d 837 (1968); and *Mahnke v. Northwest Publications, Inc.,* 280 Minn. 328, 160 N.W.2d 1 (1968).

By reason of the expression of the United States Supreme Court and of the holdings of numerous other courts throughout the land which declare police officers to be public officials as defined in the *New York Times* case, we are impelled to so hold in the instant case. We, therefore, answer the certified question in the affirmative.

This decision, however, does not foreclose the plaintiff from proceeding with the trial of his action. It is noted that the plaintiff, in his complaint, alleges malice and specifically that the newspaper story was published "with a reckless disregard as to whether they [statements] were true or false * * * ." The quoted phrase reflects the *New York Times Co. v. Sullivan* definition of actual malice. Therefore, inasmuch as the record suggests that the plaintiff may be able to present a jury question of the required malice, he will be afforded that opportunity.

In view of the foregoing this case cannot be disposed of by summary judgment and the court's action in overruling the motion for summary judgment is affirmed; however, the ruling of the Circuit Court of Wyoming County upon the question presented by certificate is reversed and this

action is remanded to that court for further proceedings in accordance with the principles enunciated in this opinion.

*Affirmed; but
ruling on certified
question reversed.*