346 S.E.2d 778

**Bill LONG and the W. Va. Education Association**

v.

**Hon. L.D. EGNOR, Jr., Circuit Judge of Cabell County.**

No. 16825.

Supreme Court of Appeals of West Virginia.

July 3, 1986.

Rudolph L. DiTrapano, Joshua I. Barrett & Rebecca A. Baitty, Charleston, for petitioners.

James Allan Colburn, Baer, Colburn & Morris, Huntington, for respondent.

MILLER, Chief Justice:

In this case, we are being asked to prohibit further proceedings in a libel action filed by the individual members of the Cabell County Board of Education against the West Virginia Education Association (hereinafter "WVEA") and Bill Long, a WVEA employee responsible for representing WVEA members in administrative proceedings.

The alleged defamatory publication is a memorandum from Mr. Long, acting on behalf of the WVEA, to some of its members in Cabell County. The memorandum, which has the WVEA letterhead at the top

of the page, contains a reference heading which states: "RE: Harassment and Coercing of Members." The relevant text of the memorandum is:

"It has been reported to me that a member of the Cabell County Board of Education has allegedly visited job locations in Cabell County to tell our ESP members that the administration and Board will systematically *deny all grievances* filed by any ESP member. Furthermore, this Board member has allegedly stated that anyone who files a grievance ought to be fired.

"If any of these reported events did occur, they would be in violation of individual and organizational Constitutional rights and also in violation of West Virginia State Law." (Emphasis in original).[1]

In their complaint, the Board members claimed the memorandum was false, demeaning, and libelous per se. Furthermore, they alleged that the memorandum imputes the plaintiffs are unfit to perform their duties, infers a want of integrity in the discharge of their duties, and prejudices them in their chosen field of public service. The complaint included a claim under W.Va. Code, 55–7–2, which provides a cause of action for insulting words.[2] The plaintiffs prayed for $500,000 as compensatory damages and $1,500,000 as punitive damages on each claim.

Although the WVEA moved to dismiss the complaint on several grounds, its main argument was that the complaint failed to state a claim upon which relief can be granted. The circuit court denied the WVEA's motion to dismiss and refused its request to stay the initiation of discovery by the Board members. Following this decision, the WVEA filed a petition for a writ of prohibition in this Court to cease any further proceedings in this action.

## I.

The WVEA seeks prohibition relief contending, among other things, that the language in the memorandum is not defamatory as a matter of law. The Board members initially urge that prohibition is an inappropriate remedy. However, we believe prohibition is appropriate after the denial of a motion to dismiss in certain circumstances, as illustrated by our decision in *Webb v. Fury*, 167 W.Va. 434, 282 S.E.2d 28 (1981).

*Webb* involved a person who was the managing agent of an environmental group opposed to certain surface mining activities of a coal company. He filed complaints against the coal company with federal regulatory agencies maintaining that the company was not complying with applicable surface mining statutes. He also published a newsletter which alleged that surface mining by the company was destroying and damaging several streams. The coal company sued claiming his statements to the administrative agencies and in the newsletter were false and defamatory.

Although *Webb* dealt with a citizen's right to petition the government pursuant to the First Amendment to the United States Constitution and Article III, Section 16 of the West Virginia Constitution, its primary concern was the chilling effect of litigation on a citizen who was exercising a sensitive constitutional right, which was at the heart of the litigation. In Syllabus Points 2 and 3 of *Webb*, we concluded prohibition was appropriate in this type of situation:

"2. While the denial of a motion to dismiss is not usually an error for which

---

1. The remaining text of the memorandum is:
   "If you have information regarding this matter and would be willing to testify in a legal proceeding, please call me toll-free at 1–800–642–8261.
   "This is a serious matter and must be stopped immediately."

2. W.Va. Code, 55–7–2, provides: "All words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon." In *Mauck v. City of Martinsburg*, 167 W.Va. 332, 280 S.E.2d 216 (1981), we indicated that our insulting words statute is subject to the same First Amendment privileges that are applicable in an ordinary defamation action. We, therefore, will not make any independent analysis of this statute in this case.

prohibition will lie, prohibition will be used to examine the propriety of such a ruling when, as here, the ruling invades the unique constitutional guarantee of the right to petition the government for a redress of grievances contained in the First Amendment to the United States Constitution and article III, § 16 of the Constitution of West Virginia.

"3. Prohibition will lie to prohibit a case from proceeding to trial when the remedy of appeal is manifestly inadequate to protect against the chilling effect of allowing a suit to proceed because the complaint, as a matter of constitutional law, contains insufficient allegations to warrant an interference with a citizen's right to petition the government."

■ Consequently, we conclude prohibition will lie to prohibit a case from proceeding to trial when the remedy of appeal is manifestly inadequate to protect against the chilling effect of allowing a suit to proceed because the complaint, as a matter of constitutional law, contains insufficient allegations to warrant interference with a citizen's right to free speech under the First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution.

## II.

Ordinarily, in reviewing the appropriateness of a Rule 12(b)(6) motion to dismiss, we have followed the general rule summarized in Syllabus Point 3 of *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207 (1977):

"The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 [78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84] (1957)."

*See also Sticklen v. Kittle*, 168 W.Va. 147, 164, 287 S.E.2d 148, 156 (1981); *John W. Lodge Distributing Co. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978).

While this rule is generally applicable in the ordinary case, we believe that where First Amendment rights are implicated, courts have applied a stricter standard in judging the sufficiency of a complaint.

There can be little doubt that since *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964), the right of public officials to sue for libel has been severely curtailed because of the actual malice requirement and other restrictions based upon the First Amendment's free speech right that have become critical factors in libel cases.[3] The basis for this rule was to prevent stifling speech directed at criticizing the actions of public officials, as explained in *Sullivan*, 376 U.S. at 270, 84 S.Ct. at 721, 11 L.Ed.2d at 701, 95 A.L.R.2d at 1430: "Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."

Furthermore, *Sullivan* established that from an evidentiary standpoint, proof of actual malice in a libel action must be shown by "convincing clarity which the constitutional standard demands." 376 U.S. at 285–86, 84 S.Ct. at 729, 11 L.Ed.2d at 710, 95 A.L.R.2d at 1438. This standard was refined to "clear and convincing evidence" in *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 511, 104 S.Ct. 1949, 1965, 80 L.Ed.2d 502, 524 (1984).[4]

---

**3.** Both the First Amendment to the United States Constitution as well as our constitutional counterpart found in Article III, Section 7 prohibit any "law abridging the freedom of speech, or of the press." The precise First Amendment language is: "Congress shall make no law ...

abridging the freedom of speech, or of the press."

**4.** In *Bose*, 466 U.S. at 504, 104 S.Ct. at 1961, 80 L.Ed.2d at 519, the United States Supreme Court commented that not all utterances are protected by the First Amendment and listed these categories as examples of such utterances:

█ The law is clear that a citizen's constitutional right to freedom of speech is equal to the media's constitutional right to freedom of the press where the speech involves an area of public concern. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 786–787, 105 S.Ct. 2939, 2959, 86 L.Ed.2d 593, 619 (1985) (Brennan, J., dissenting, joined by five other justices on this point);[5] *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); *see also England v. Daily Gazette Co.*, 143 W.Va. 700, 714, 104 S.E.2d 306, 314 (1958).

It is not without some interest that in fashioning its "actual malice" standard, *Sullivan* cited, as support, *Bailey v. Charleston Mail Ass'n*, 126 W.Va. 292, 307, 27 S.E.2d 837, 844 (1943), and then made this historic formulation:

> "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not. An oft-cited statement of a like rule ... has been adopted by a number of state courts." 376 U.S. at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706, 95 A.L.R.2d at 1435. (Footnote omitted).

This constitutional rule drew its vitality from state cases such as *Bailey*, which had held that one exercising his right of free speech had a qualified privilege in speaking out on the conduct of public officials. A public official could only overcome the qualified privilege by showing that the statement was not only false, but was made with actual malice.[6] These principles are established in our libel law. *E.g., Mauck v. City of Martinsburg*, 167 W.Va. 332, 280 S.E.2d 216 (1981); *Sprouse v. Clay Communication, Inc.*, 158 W.Va. 427, 211 S.E.2d 674, 95 A.L.R.3d 622, *cert. denied*, 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107 (1975); *Starr v. Beckley Newspapers Corp.*, 157 W.Va. 447, 201 S.E.2d 911 (1974); *see also Dostert v. Washington Post Co.*, 531 F.Supp. 165 (N.D.W.Va.1982).

In *Bose*, the United States Supreme Court examined what standard of review an appellate court must apply in a libel case, and particularly whether the clearly erroneous standard found in Rule 52(a) of the Federal Rules of Civil Procedure,[7] should be utilized in a case which is subject to the *Sullivan* requirements. The United States Supreme Court concluded Rule 52(a) did not apply and the standard in a defamation action is an independent review based upon First Amendment constitutional principles:

> "The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection

---

"Libelous speech has been held to constitute one such category, see *Beauharnais v. Illinois*, 343 U.S. 250 [72 S.Ct. 725, 96 L.Ed. 919 (1952)]; others that have been held to be outside the scope of the freedom of speech are fighting words, *Chaplinsky v. New Hampshire*, 315 U.S. 568 [62 S.Ct. 766, 86 L.Ed. 1031 (1942)], incitement to riot, *Brandenburg v. Ohio*, 395 U.S. 444 [89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)], obscenity, *Roth v. United States*, 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)], and child pornography, *New York v. Ferber*, 458 U.S. 747 [102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)]." (Footnote omitted).

**5.** In *Dun & Bradstreet*, the United States Supreme Court concluded that a state rule permitting presumed and punitive damages in a defamation action without a showing of actual malice did not violate the First Amendment where the defamatory statements did not involve matters of public concern.

**6.** In Syllabus Point 2 of *Bailey*, we said: "A misstatement of fact with reference to the official acts of a public officer made without malice and in the reasonable and honest belief that the statement is true, is qualifiedly privileged." *See also* Syllabus Point 4, *Swearingen v. Parkersburg Sentinel Co.*, 125 W.Va. 731, 26 S.E.2d 209 (1943).

**7.** At the time of *Bose*, Rule 52(a), relating to review of bench trials, provided in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Our Rule 52(a) was modeled after its federal counterpart and is worded similarly.

is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'" 466 U.S. at 511, 104 S.Ct. at 1965, 80 L.Ed.2d at 523.

The underlying rationale for *Bose* was found in earlier cases where the United States Supreme Court had asserted that it had the authority not only to delineate constitutional principles, but also to "review the evidence to make certain that those principles have been constitutionally applied." *New York Times v. Sullivan,* 376 U.S. at 285, 84 S.Ct. at 728, 11 L.Ed.2d at 709, 95 A.L.R.2d at 1437–38. *See also Time, Inc. v. Pape,* 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971); *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971); *Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).

In these cases, as well as others, it is clear that the United States Supreme Court conducts an independent review of the evidence in libel cases to determine as a matter of constitutional law whether the statement was libelous or was made with actual malice. In *Greenbelt,* the newspaper had published a story about a local real estate developer's efforts to obtain certain zoning variances. The story reported what had occurred during several city council meet-

ings where several persons had accused the developer of "blackmail." For purposes of the libel action filed by the developer, it was admitted that he was a public figure. The United States Supreme Court concluded as a matter of law that read in the context of the news article, the term "blackmail" could not be deemed to be the imputation of the crime of blackmail.[8]

Of some relevance is *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), where a prosecuting attorney attacked several local judges, accusing them of being lazy, inefficient, and of taking excessive vacations. He also accused them of hampering his efforts to enforce vice laws and concluded by saying: "This raises interesting questions about the racketeer influences on our eight vacation-minded judges." 379 U.S. at 66, 85 S.Ct. at 211, 13 L.Ed.2d at 128.

The prosecuting attorney was convicted of criminal libel and the United States Supreme Court stated the *Sullivan* standard was applicable to a criminal libel procedure where public officials are involved. It went on to hold that the public official rule is not rendered inapplicable because an official's private reputation may be harmed along with his public reputation.[9] The criminal libel conviction was reversed because the prosecuting attorney's criticisms were found to be protected speech.

Undergirding all these cases is the thought expressed in *Sullivan,* 376 U.S. at 271–72, 84 S.Ct. at 721, 11 L.Ed.2d at 701,

---

**8.** The United States Supreme Court's reasoning on this point in *Greenbelt,* 398 U.S. at 14, 90 S.Ct. at 1542, 26 L.Ed.2d at 15, is as follows:

"It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it was [the developer's] public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging [the developer] with the commission of a criminal offense. On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable." (Footnote omitted).

**9.** The United States Supreme Court in *Garrison,* 379 U.S. at 77, 85 S.Ct. at 217, 13 L.Ed.2d at 134, explained:

"The *New York Times* rule is not rendered inapplicable merely because an official's private reputation, as well as his public reputation, is harmed. The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character." (Footnote omitted).

95 A.L.R.2d at 1431, and frequently repeated that "erroneous statement is inevitable in free debate ... [and] must be protected if the freedoms of expression are to have the 'breathing space' that they 'need ... to survive.' " (Citation omitted).

It is perhaps in recognition of this need for free debate that some courts have adopted the view that in a libel case a motion to dismiss will be granted more readily where public officials are involved and *Sullivan*'s First Amendment principles are applicable. In 5 C. Wright & A. Miller, Federal Practice &. Procedure § 1357 at 610 (1969), the authors state:

"There is one significant exception to the general rule that the complaint will be construed liberally on a Rule 12(b)(6) motion. When the claim alleged is a traditionally disfavored 'cause of action,' such as malicious prosecution, libel, and slander, the courts tend to construe the complaint by a somewhat stricter standard and are more inclined to grant a Rule 12(b)(6) motion to dismiss." (Footnote omitted).

Some state courts have adopted a stricter analysis in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion to dismiss where the underlying action involves malicious prosecution, defamation, or some other action traditionally disfavored by the courts. *See generally Hatcher v. Moree*, 133 Ga.App. 14, 209 S.E.2d 708 (1974); *Kersey v. Harbin*, 531 S.W.2d 76 (Mo.Ct.App. 1975); *Janklow v. Viking Press*, 378 N.W.2d 875 (S.D.1985); *Weber v. Johnston Fuel Liners, Inc.*, 540 P.2d 535 (Wyo.1975).

We also note that courts generally are more inclined to grant motions for summary judgment in defamation actions filed by public officials or public figures. For example, in *Mark v. Seattle Times*, 96 Wash.2d 473, 485–86, 635 P.2d 1081, 1088 (1981) (en banc), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2942, 73 L.Ed.2d 1339 (1982), the Supreme Court of Washington

explained its rule for appraising motions for summary judgment in defamation actions filed by public officials:

"'In defamation actions by public officials, although the summary judgment procedure is basically the same, we are convinced the decisions of the United States Supreme Court have added a new facet, ... which must now be considered and resolved by the trial courts. In other words, in such defamation actions, if the trial judge at the summary judgment stage determines that the plaintiff has offered evidence of *a sufficient quantum to establish a prima facie case*, and the offered evidence *can be equated with the standard or test of "convincing clarity"* prescribed by United States Supreme Court decisions, the motion for summary judgment should be denied.'" (Citations and footnote omitted; emphasis in original).

*See also Washington Post Co. v. Keogh*, 365 F.2d 965, 20 A.L.R.3d 972 (D.C.Cir. 1966), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); *Reader's Digest . Ass'n, Inc. v. Superior Court*, 37 Cal.3d 244, 690 P.2d 610, 208 Cal.Rptr. 137 (1984) (in bank); *Godbout v. Cousens*, 396 Mass. 254, 485 N.E.2d 940 (1985); *Kotlikoff v. Community News*, 89 N.J. 62, 444 A.2d 1086 (1982); *Rye v. Seattle Times Co.*, 37 Wash.App. 45, 678 P.2d 1282, *cert. denied*, 469 U.S. 1087, 105 S.Ct. 593, 83 L.Ed.2d 703 (1984); *see generally* 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2730 at 244–45 (1983); Comment, *The Use of Summary Judgments in Defamation Cases*, 14 U.San Fran.L.Rev. 77 (1979); Note, *The Role of Summary Judgment in Political Libel Cases*, 52 S. Cal.L.Rev. 1783 (1979).[10]

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–257, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202, 215–16 (1986), the United States Supreme Court recently addressed what standard a court must apply in evaluating a motion for summary judgment in a

---

**10.** We acknowledge the dicta in *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411, 422 n. 9 (1979), where the United States Supreme Court stated that since the question of actual malice often involves a defendant's state of mind, summary judgment may not be appropriate where malice is the central issue in a defamation case. In the present case, malice is not the issue upon which our decision is based.

libel action filed by a public figure and concluded:

"Thus, in ruling on a motion for a summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden....

\* \* \* \* \* \*

"In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case.... Consequently, where the *New York Times* 'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." (Footnote omitted).

■ We believe that the First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution require that trial courts apply a stricter standard in appraising defamation actions filed by public officials or public figures under a motion to dismiss filed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Unless the complaint demonstrates on its face sufficient facts to support the elements of a defamation action, the complaint should be dismissed under Rule 12(b)(6).

### III.

The WVEA's main assertion is that the statements contained in the memorandum

are not defamatory as a matter of law and cannot form the basis for a libel action. The Board members argue that the statements adversely affect the reputations of all the Board members.

■ For the purposes of this opinion, we will assume, without deciding, that even though the memorandum in this case did not identify the Board member who allegedly made the statements, all five Board members had the right to bring this libel action because it is a small group. *See* Syllabus Point 1, *Swearingen v. Parkersburg Sentinel Co., supra.*[11] As elected public officials, there is no question that the Board members must be treated as public officials, as that term is used in libel law. *See Garcia v. Board of Education,* 777 F.2d 1403 (10th Cir.1985) (school board members held to be public officials).

■ In Syllabus Point 1 of *Sprouse v. Clay Communication, Inc.,* 158 W.Va. 427, 211 S.E.2d 674, 95 A.L.R.3d 622, *cert. denied,* 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107 (1975), we set out the elements of a libel action filed by a public official:

"A candidate for political office is governed by the same rules with regard to recovery for libel as a public official and can sustain an action for libel only if he can prove that: (1) the alleged libelous statements were false or misleading; (2) the statements tended to defame the plaintiff and reflect shame, contumely, and disgrace upon him; (3) the statements were published with knowledge at the time of publication that they were false or misleading or were published with a reckless and willful disregard of truth; and, (4) the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material."

■ The critical issue that must be decided by a court initially is whether the challenged statements are defamatory. This issue is particularly important in cases

---

**11.** Syllabus Point 1 of *Swearingen* states: "If defamatory words are published concerning a restricted group of persons, a member of that group may maintain an action thereon as sole plaintiff." *See also Neal v. Huntington Publishing Co.,* 159 W.Va. 556, 223 S.E.2d 792 (1976) (per curiam).

involving public officials because *Sullivan* accords a higher degree of protection to criticism of public officials under the First Amendment. In *Mauck*, we discussed this initial threshold determination of whether a statement was defamatory as a matter of law and concluded in Syllabus Point 2, in part:

> "Under *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1969), whenever there is a First Amendment defense to actions under state law, the state court is required to be a judge of both the facts and the law."

■ Most courts in other jurisdictions have also held that a court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory meaning. *See, e.g., Harris v. School Annual Publishing Co.*, 466 So.2d 963 (Ala.1985); *Slawik v. News-Journal Co.*, 428 A.2d 15 (Del.1981); *Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108 (Iowa 1984); *Henry v. Halliburton*, 690 S.W.2d 775 (Mo.1985) (en banc); *Silence v. Journal Star Printing Co.*, 201 Neb. 159, 266 N.W.2d 533 (1978); *Kotlikoff v. Community News*, 89 N.J. 62, 444 A.2d 1086 (1982); *Aronson v. Wiersma*, 65 N.Y.2d 592, 483 N.E.2d 1138, 493 N.Y.S.2d 1006 (1985); *Robert K. Bell Enterprises, Inc. v. Tulsa County Fairgrounds Trust Authority*, 695 P.2d 513 (Okla.1985); *Elias v. Youngken*, 493 A.2d 158 (R.I.1985); *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985).

In Syllabus Point 1 of *Sprouse*, we stated that a statement is defamatory if it reflects "shame, contumely, and disgrace" upon a person.[12] The Supreme Court of California has evolved an even more limited test for determining whether a given statement defames a public official in *Okun v. Superior Court*, 29 Cal.3d 442, 451, 629 P.2d 1369, 1374, 175 Cal.Rptr. 157, 162, *cert. denied*, 454 U.S. 1099, 102 S.Ct. 673,

70 L.Ed.2d 641 (1981): "[S]hort of accusations of crime or personal dishonesty, the First Amendment protects even sharp attacks on the character, motives, or moral qualifications of 'a public officer.'" (Citation omitted).

■ We believe the statements challenged in the present case do not constitute libel as a matter of law against the Board members. When read in the context in which they were published, the statements do not under *Sprouse* expose the Board members to shame, contumely, or disgrace and also do not charge them with a crime or personal dishonesty.

The main allegation made in the memorandum is that a Board member has stated that in the future the Board will violate the procedural rights of school employees. We find such an allegation leveled against a public official to be rather tame, particularly in light of the decisions in *Greenbelt* and *Garrison*, where the United States Supreme Court found much more severe allegations to be nondefamatory as a matter of law. The question of whether the challenged statements in the present case are actionable is not even a close one—they clearly are not defamatory.

■ Furthermore, the concluding second paragraph of the memorandum which states that if the "reported events did occur, they would be in violation of individual and organizational Constitutional rights and ... West Virginia State Law" is nothing more than an expression of opinion. In discussing statements of opinion in the context of a defamation action, the United States Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789, 805 (1974), stated: "We begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for

---

**12.** In *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1984), where we dealt with the libel of a private individual, we utilized the Restatement (Second) of Torts § 559 (1977) definition that a statement may be described as defamatory "if it tends so to harm the reputation of another as to lower him in the estima-

tion of the community or to deter third persons from associating or dealing with him." This definition is much too general to be applied in a case involving public officials where the *Sullivan* standard relating to the criticism of public officials is applicable.

its correction not on the conscience of judges and juries but on the competition of other ideas." (Footnote omitted). *See also Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. at 504, 104 S.Ct. at 1961, 80 L.Ed.2d at 518.

As a result of this statement from *Gertz,* which was reaffirmed in *Bose,* a majority of jurisdictions have held that statements of opinion are absolutely protected under the First Amendment and cannot form the basis for a defamation action. These courts also hold that whether a statement is one of fact or opinion is an issue that must be decided initially by a court. *See, e.g., Ollman v. Evans,* 750 F.2d 970 (D.C.Cir.1984) (en banc), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985); *Gregory v. McDonnell Douglas Corp.,* 17 Cal.3d 596, 552 P.2d 425, 131 Cal.Rptr. 641 (1976); *Burns v. McGraw-Hill Broadcasting Co.,* 659 P.2d 1351 (Colo.1983) (en banc); *Caron v. Bangor Publishing Co.,* 470 A.2d 782 (Me.), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed. 821 (1984); *Lyons v. New Mass Media, Inc.,* 390 Mass. 51, 453 N.E.2d 451 (1983); *Pease v. Telegraph Publishing Co.,* 121 N.H. 62, 426 A.2d 463 (1981); *Kotlikoff v. Community News, supra; Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 366 N.E.2d 1299, 391 N.Y.S.2d 943, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977); *Marchiondo v. Brown,* 98 N.M. 394, 649 P.2d 462 (1982); *Chaves v. Johnson, supra.*

It is true, as we recognized in Syllabus Point 4, in part, of *Havalunch, Inc. v. Mazza,* 170 W.Va. 268, 294 S.E.2d 70 (1981), adopting Section 566 of the Restatement (Second) of Torts, that where an opinion rests upon implied facts that are themselves defamatory, it may be actionable: "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."

An illustration of this principle, and one offered by the Board members, is an opinion that someone has committed a murder.

The undisclosed defamatory facts are that the person has killed someone under unjustifiable circumstances (as in any defamation, this assumes that the murder charge is false). Here, however, the underlying facts are not undisclosed in that the alleged libelous memorandum specifically sets out the statements of the Board member on which Mr. Long's conclusion was based. Of even more importance is the fact that the summary by Mr. Long of the underlying statements made by the Board member have been found not to be defamatory. Consequently, the rule contained in *Havalunch* is not applicable and the opinion is protected under *Gertz.*

For the foregoing reasons, we conclude a writ of prohibition should issue prohibiting further prosecution of the underlying civil action.

Writ granted.