THOMAS ANGELO, Plaintiff-Appellant, *v.* ARTHUR BRENNER, Defendant-Appellee.

First District (5th Division)    No. 79-864

Opinion filed May 9, 1980.

Arnold and Kadjan, of Chicago (Daniel N. Kadjan, of counsel), for appellant.

Kirkland & Ellis, of Chicago (Keith C. McDole and William H. Pratt, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court: ·

Plaintiff, a Chicago policeman, appeals the trial court's order granting defendant's motion for summary judgment in his action for slander against defendant. He contends that the motion for summary judgment should not have been granted because genuine issues as to material facts existed in the case. We affirm.

The record in this case includes the pleadings, a deposition of plaintiff, and the affidavits of plaintiff and Officer M. Giersch. At about 10 a.m. on August 18, 1974, plaintiff observed an automobile making an illegal U-turn on Pueblo Street near Bryn Mawr Street. The automobile was being driven by defendant's wife and was carrying defendant, who

was a psychiatrist, and an elderly woman as passengers. Plaintiff followed the car and ordered the driver of the car to pull over to the side of the road. After she had done so, he requested to see her driver's license. She showed him an out-of-State driver's license. He then informed her that she could not post this license as bond for the traffic offense and asked her if she had a bond card. When she told him that she did not have a bond card, he told her that she would have to go to the police station where she could post a cash bond. She and defendant then told him that they were on their way to the airport and asked if he could just write them a ticket and save the 10-minute trip to the police station. He said that he could not do this, and told them to follow him to the station.

After they arrived at the station, plaintiff told Thomas Ianonitti, the acting desk sergeant, about the traffic offense and asked him what the cash bond would be for such an offense. Officers Stan Cook and M. Giersch were present while he was speaking to Ianonitti. After defendant posted bond, he was given a receipt and a copy of the traffic ticket. He then asked to talk to plaintiff's supervisor, Lieutenant Vitek. Defendant explained to Vitek what had happened and told him that plaintiff did not use any foul language and was not abusive to him. Ultimately, Vitek told him that the matter would be handled in court. As the defendant was leaving the station, he pointed at plaintiff and said in a raised voice, "as a psychiatrist, Officer Angelo is unfit to be a policeman." Afterwards, Officers Ianonitti, Cook, and Giersch told plaintiff that they heard this statement. Officer Giersch, in his affidavit, stated:

> "9. Because I am aware that doctors have certain professional standards, I believe that no psychiatrist would tell a policeman that he was unfit to be a policeman unless that psychiatrist had proof of the unfitness.
>
> 10. After Dr. Brenner said that Officer Angelo was unfit to be a policeman, I began to wonder whether or not Officer Angelo was fit. I also began to wonder what happened between the Brenners and Officer Angelo before the three of them came into the police station."

Nonetheless, despite these averments, plaintiff's deposition indicates that Officer Giersch never told him that he believed the statement.

Plaintiff brought suit claiming that defendant's statement constituted slander *per se*. Defendant ultimately filed a motion for summary judgment. After hearing arguments on the motion, the trial court granted the summary judgment, stating:

> "I think that you must examine the entire context of the statement made in a police station and that in light of all the surrounding facts that the statement is generally protected by the First Amendment."

This appeal follows the entry of the order of the trial court.

Opinion

Plaintiff contends that the motion for summary judgment should have been denied since the record contains ample evidence of actual malice on defendant's part in making the statement and ample evidence that the statement constituted slander *per se.*

■■ ■ Plaintiff is a public official (*Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 239 N.E.2d 837; *Weber v. Woods* (1975), 31 Ill. App. 3d 122, 334 N.E.2d 857) and as such he must establish that defendant made his allegedly defamatory statement with actual malice before he can prevail. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.) Actual malice is defined as knowledge that a statement is false or reckless disregard as to whether the statement is true or false. (*Troman v. Wood* (1975), 62 Ill. 2d 184, 340 N.E.2d 292.) In order to establish that a statement has been made with reckless disregard of its truth or falsity, plaintiff must establish more than that defendant failed to investigate. (*Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, 387 N.E.2d 714.) He must establish that the defendant "entertained serious doubts as to the truth of his publication." (*St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323, 1325.) A summary judgment is properly granted in a public official defamation suit if there is no evidence presented to support a finding of actual malice. See *Weber v. Woods.*

■■ We find no evidence in the present record to support a finding of actual malice. Plaintiff claims that the record creates at least a triable issue on the question of actual malice since:

(1) the main intention for the publication of the statement was to intimidate him; and

(2) the defendant could not have possibly made a psychiatric diagnosis of him during the short period they were together.

Yet, there is no record support for the proposition that defendant was intending to intimidate plaintiff or any basis for making such an inference and, as already noted, plaintiff must show more than a failure to investigate in order to establish that defendant made his statement with reckless disregard. Contrary to plaintiff's claim, we read the record as merely demonstrating that defendant directed one isolated comment at plaintiff after plaintiff had inconvenienced him and his wife by properly directing them to the police station to post a cash bond for the traffic offense committed by his wife. Although the words used were poorly chosen and poorly timed, we are certain that such a comment, even when made by a psychiatrist, does not constitute the type of egregious conduct creating a triable issue on the question of actual malice. Since there was no evidence to support a finding of actual malice, the summary judgment was properly granted.

The present case is unlike other policeman defamation cases in which it has been found that a triable issue existed on the question of actual malice. For example, in *Weber v. Woods* (1975), 31 Ill. App. 3d 122, 334 N.E.2d 857, we held that a trial court had erred in granting defendant's motion for summary judgment where evidence was offered that defendant had received, initialed, and filed a summary of a police department investigation which stated that there was not sufficient evidence to sustain subsequent slanderous allegations made by defendant against plaintiff. And, in *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 239 N.E.2d 837, our supreme court affirmed an order of this court reversing the trial court's granting of defendant's motion for summary judgment where the amended complaint created triable issues of fact. In *Coursey*, the supreme court held that the complaint which incorporated an allegedly libelous newspaper article, gave rise to factual inferences tending to support the charge of actual malice. Neither of these cases involve facts similar to those in the present case.

Even if we were to assume that the record in this case presents a triable issue on the question of actual malice, we would still find that the trial court ruled correctly in granting the motion for summary judgment since defendant's statement is not actionable as slander *per se* or slander *per quod*. A statement may constitute slander *per se* if it imputes an inability to perform the duties of office or employment or it prejudices a person in his profession. (*Valentine v. North American Co.* (1974), 60 Ill. 2d 168, 328 N.E.2d 265; *Kirk v. Village of Hillcrest* (1975), 31 Ill. App. 3d 1063, 335 N.E.2d 535.) Yet, not every expression of opinion touching on a person's fitness to perform his job is slander *per se*. (*Valentine v. North American Co.*; *Sloan v. Hatton* (1978), 66 Ill. App. 3d 41, 383 N.E.2d 259; *Stanley v. Taylor* (1972), 4 Ill. App. 3d 98, 278 N.E.2d 824, *cert. denied* (1972), 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 321.) Each case of slander must be considered on its own facts and where possible words should be innocently construed so that they may be declared nonactionable as a matter of law. *Valentine v. North American Co.*

Upon consideration of the facts in this case, we find that defendant's statement did not constitute slander *per se*. Initially, we note that defendant's statement was made to a police officer who had forced him to delay his trip to the airport and come to the police station to post a cash bond for the traffic offense committed by his wife. Although plaintiff might have been surprised by the phraseology of defendant's response to this set of circumstances, he certainly could not have been surprised that defendant did make a response. He specifically stated in his deposition that "[i]t's a normal thing for [arrested] people to make some remarks. I don't think you're doing your job right or something like that." The fact

that defendant is a psychiatrist does not elevate his response to anything more than an angry comment by the indignant husband of a woman who had violated a traffic law. Even though defendant used the word "unfit" in his estimation of plaintiff's performance, we do not think that under the circumstances of this case that his statement can be interpreted as a professional opinion. Other factors which we have considered in our finding that defendant's statement was not slander *per se* are that the statement was the only allegedly defamatory statement made and was relatively mild. (*Cf. Moriarty v. Lippe* (1972), 162 Conn. 371, 294 A.2d 326 (police officer defamation case where a court found that repeated invective before an assembled mass of 35-40 people did not constitute slander *per se*).) Also, the statement was made before only three other police officers who were assumedly aware of the reason for defendant's presence at the police station and assumedly accustomed to the not uncommon response of a motorist or other interested party upon receiving a traffic citation. In light of all of these circumstances, we believe that an innocent construction should be placed on defendant's statement.

The circumstances of this case are somewhat similar to those present in *Stanley v. Taylor* (1972), 4 Ill. App. 3d 98, 278 N.E.2d 824, *cert. denied* (1972), 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 321. There, a school principal claimed that an emotionally overwrought teacher's criticism of his fitness to perform as a principal, made with very few persons within hearing, constituted slander *per se*. Taking a common sense approach in its analysis of the criticism, the court noted:

> "Taking plaintiff's testimony as true, and as a basis for our consideration, we have particularly noted that the exchange between plaintiff and defendant took place with very few persons within hearing, and that the statements made by defendant were spoken in a rather hysterical manner and under circumstances which would make it apparent to the observer that what was said was nothing more than an irrational argumentative characterization not worthy of serious consideration. While portions of the first utterance went beyond mere name-calling, and included reference to plaintiff in relation to his profession, we do not believe that the words were actionable *per se* under the circumstances of this case. This is not a situation where defendant made a deliberate communication to someone other than plaintiff such as the superintendent of schools or a similar individual with the direct intention of doing injury to plaintiff in his position and profession. As the record shows, the outburst was spontaneous and made directly to plaintiff and was obviously more thoughtless than anything else, and a considered evil intention to defame is not

easily imputed therefrom." (4 Ill. App. 3d 98, 105, 278 N.E.2d 824, 829.)

Applying this same sort of analysis to the circumstances in the present case, we too find that the comment made did not constitute slander *per se.*

Also, defendant's comment did not constitute slander *per quod.* In order to establish slander *per quod,* special damages must be pleaded and proved. (*Kirk v. Village of Hillcrest* (1975), 31 Ill. App. 3d 1063, 335 N.E.2d 535.) The record does not demonstrate that plaintiff has suffered any special damages as a result of defendant's comment. Plaintiff's deposition indicates that he suffered damage to his pride and self-respect but "the gravamen of an action for defamation is not the injury to the plaintiff's feelings, but damage to his reputation in the eyes of other persons * * *." (*Stanley v. Taylor* (1972), 4 Ill. App. 3d 98, 103, 278 N.E.2d 824, 828.) His deposition does not indicate any such damage. And, although Officer Giersch's affidavit indicates that he "began to wonder" about plaintiff's fitness to perform as a policeman, this statement does not demonstrate any actual damage to plaintiff's reputation. In fact, plaintiff's deposition indicates that Giersch never told plaintiff that he believed defendant's comment. Without something more concrete, an action for slander *per quod* cannot be maintained.

Affirmed.

LORENZ and MEJDA, JJ., concur.