■ ANTHONY SCACCHETTI, Respondent, v GANNETT CO., INC., Appellant.—Order affirmed with costs. Memorandum: Special Term erred in determining that defendant's summary judgment motion is barred by the rule prohibiting successive summary judgment motions. Defendant's prior motion was made pursuant to CPLR 3211 (a) (7) and the court's entry of judgment was without notice to the parties *(Scacchetti v Gannett Co.,* 90 AD2d 985). We agree with Special Term that the "single instance rule" is inapplicable to this libel action because the statement complained of by plaintiff tends to "show * * * a lack of character or a total disregard of professional ethics" *(Mason v Sullivan,* 26 AD2d 115, 117) and is thus "arguably libelous per se" *(Scacchetti v Gannett Co., supra,* p 986). Contrary to the conclusion of Special Term, however, we find that plaintiff, a police sergeant, is a public official as a matter of law *(see, Brady v Ottaway Newspapers,* 84 AD2d 226, 239-240; *Malerba v Newsday, Inc.,* 64 AD2d 623, 624; *Orr v Lynch,* 60 AD2d 949, 950, *affd* 45 NY2d 903) since the allegedly libelous statement concerns acts or conduct " 'which might touch on [his] fitness for office' " *(Gertz v Robert Welch, Inc.,* 418 US 323, 345, quoting *Garrison v Louisiana,* 379 US 64, 77). As a consequence, plaintiff must prove that defendant published the offending article with

actual malice, i.e., with knowledge of its falsity or reckless disregard of whether it was false *(New York Times Co. v Sullivan,* 376 US 254, 279-280). While we disagree with Special Term's finding that defendant published the statement with knowledge of its falsity, we believe plaintiff has shown sufficient reasons to doubt the veracity of the article *(see, St. Amant v Thompson,* 390 US 727, 732-733) so as to warrant trial on the issue.

The offending article, which incorrectly identified plaintiff as the individual who "spewed obscenities" about the Federal Judge who had just sentenced his brother, Judge Scacchetti, to prison, was written by an experienced reporter, Nancy Monaghan. She was assigned to cover the sentencing in place of the reporter who had covered the trial. After the sentencing, she observed Judge Scacchetti, his wife, his lawyer, a codefendant and his lawyer and others, including the individual she believed to be the plaintiff, gathered in the corridor of the courthouse and heard that individual revile the Judge. Before writing the story, Monaghan attended an impromptu press conference held by Judge Scacchetti, reviewed related newspaper articles and interviewed two United States Attorneys. She did not, however, ask anyone to confirm the speaker's identity despite the fact that she knew several persons present, including lawyers and other journalists. Instead, she relied on her recollection that an individual whom she believed to be the plaintiff had been pointed out to her in the Hall of Justice some years before. She could not recall the circumstances under which that identification was made nor the person who had made it.

The subject incident occurred at approximately 10:00 A.M. and Monaghan filed her story at 5:00 or 6:00 P.M., long before her 10:30 P.M. deadline, and thus had ample time to verify its accuracy. On these facts, we believe a reasonable jury could find clear and convincing evidence that defendant published with actual malice *(see, Anderson v Liberty Lobby,* 477 US —, 106 S Ct 2505 [1986]).

All concur, except Green and Lawton, JJ., who dissent and vote to reverse and grant the motion, in the following memorandum.

Green and Lawton, JJ. (dissenting). We dissent. In our opinion summary judgment should be granted. We concur with the majority's finding that plaintiff is a public figure. For a public figure to recover on a libel cause of action, he must prove that the article was published with actual malice, *to*

*wit,* knowledge of its falsity or reckless disregard of whether it was false or not *(New York Times Co. v Sullivan,* 376 US 254). No issue is raised herein as to knowing falsity. As to "reckless disregard for the truth" it may be found only if there exist obvious reasons for defendant to doubt the veracity of the report *(St. Amant v Thompson,* 390 US 727). Additionally, the Supreme Court, in its recent decision of *Anderson v Liberty Lobby* (477 US —, 106 S Ct 2505), held that courts in reviewing summary judgment motions in libel cases involving public figures must apply the "clear and convincing" evidentiary standard in determining whether actual malice exists. The test to be applied in determining defendant's motion, therefore, is whether plaintiff has presented evidence such that a reasonable jury might find that actual malice has been shown with convincing clarity *(Anderson v Liberty Lobby, supra,* p —, p 2512).

Plaintiff has failed to meet this test. The reporter made an honest mistake in her identification of plaintiff and had no awareness of her mistake until an examination before trial of the plaintiff nearly two years later. The reporter's identification was based on her memory of plaintiff after he had been pointed out to her on a previous occasion. The editorial staff of the *Democrat & Chronicle* reviewed this article, but never questioned Reporter Monaghan's identification of plaintiff and had no reason to do so. The reporter submitting the story was an experienced, award-winning reporter who was present when the events being reported occurred. Plaintiff does not question the good faith of the reporter or editor in relying on the reporter's memory, but argues that "she [and the editor] should have done what was possible to buttress that memory". At best the reporter's reliance on her memory and the editorial board's failure to check her identification of plaintiff constitutes negligence. This is not enough to overcome 1st Amendment policies *(St. Amant v Thompson, supra,* pp 731-732; *New York Times Co. v Sullivan, supra,* p 288). From these facts, sufficient, clear and convincing evidence is not presented to permit a reasonable jury to find that defendant in fact entertained serious doubts as to the truth of the publication.

We find the court's holding in *James v Gannett Co.,* (40 NY2d 415, 424-425, *rearg denied* 40 NY2d 990) a compelling authority for granting summary judgment: "Only where the publisher has, or should have had, reasons to doubt the accuracy of the report or its reporter is there a legal duty to make further inquiry. Thus, for example, a failure to investigate a story does not in itself establish the bad faith of the

newspaper. *(St. Amant v Thompson,* 390 US 727, 733.) The appropriate test is whether a publisher had or should have had serious doubt as to the truth of the publication. In other words, it must be established that there were obvious reasons to doubt the veracity of the report. *(St. Amant v Thompson,* 390 US, at p 732, *supra; Trails West v Wolff,* 32 NY2d 207, 219.)* Here, the plaintiff has pointed to no circumstances which should have placed the publisher on guard. There is no indication that the reporter was not competent to perform his assignment or that the reporter had any reason to submit a false account of the interview. Similarly, the report, on its face, does not contain any statement that would arouse the suspicions of a careful publisher or that would give cause for further inquiry. Indeed, plaintiff admits that all but two sentences of the article were accurate. Under all these circumstances, we conclude that the plaintiff has failed to set forth any facts that would permit the jury to find that defendant acted with knowledge of the article's falsity or with reckless disregard for its truth."

Plaintiff has failed to present sufficient evidence of actual malice to defeat the summary judgment motion *(Kuan Sing Enters. v T.W. Wang, Inc.,* 58 NY2d 708, *affg on opn below* 86 AD2d 549). (Appeal from order of Supreme Court, Monroe County, Boehm, J.—summary judgment.) Present—Dillon, P. J., Denman, Green, Balio and Lawton, JJ.