David **MADSEN**, Plaintiff and
Appellant,

v.

**UNITED TELEVISION, INC.**, a Delaware
Corporation, and John Harrington, De-
fendants and Appellees.

No. 880488.

Supreme Court of Utah.

March 27, 1990.

Jerome H. Mooney, Salt Lake City, for plaintiff and appellant.

Roger F. Cutler, Greg Hawkins, Salt Lake City, for Salt Lake City Corp.

Robert M. Anderson, Thomas Karrenberg, Salt Lake City, for United Television, Inc.

HALL, Chief Justice:

Plaintiff appeals from a grant of partial summary judgment in favor of defendants in his action for defamation based upon defendants' news broadcasts of a shooting incident. Plaintiff contends that the district court erred in finding as a matter of law that his status as a police officer made him a public official.

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[1] Inasmuch as summary judgment does not determine factual issues, a challenge to summary judgment presents for review only questions of law. We therefore review for correctness and accord no particular deference to the conclusions reached by the trial court.[2]

In the instant case, none of the material facts are in dispute. Plaintiff is employed as a law enforcement officer by the Salt Lake City Police Department. On October 26, 1987, plaintiff shot and killed Clemente

---

1. *E.g., Utah State Retirement Office v. Salt Lake County,* 780 P.2d 813, 814–15 (Utah 1989); *CECO v. Concrete Specialists, Inc.,* 772 P.2d 967, 969 (Utah 1989); Utah R.Civ.P. 56(c).

2. *E.g., Mountain Fuel Supply Co. v. Salt Lake City,* 752 P.2d 884, 887 (Utah 1988).

Garcia. Earlier in the evening, Garcia's wife had called for police assistance in resolving a domestic dispute. As the police arrived, Garcia drove away, and the police gave chase. Plaintiff eventually joined in the chase and successfully blocked the roadway, forcing Garcia to stop. Garcia was armed as he stepped from his vehicle, and when he turned toward plaintiff, plaintiff opened fire and killed him.

The shooting incident was widely reported by the news media. Considerable public interest was generated, and plaintiff in particular drew widespread attention for his role in the killing of Garcia. Defendants aired numerous accounts of the killing and plaintiff's involvement therein, which included his record as a police officer and his actions that led to the death of Garcia. None of the news reports contained any information of a personal nature apart from plaintiff's performance and prior record as a police officer.

Plaintiff claimed to have been defamed by news reports that included allegations that he had a poor record within the police department; that he was in the process of being fired or removed from the department; that in killing Garcia he had acted with disregard of the safety of others and in violation of police standards and rules; and that he had fired his weapon improperly and without good reason in violation of police policies.

Defendants asserted that all of the information contained in their news reports was true and accurate, and plaintiff did not contend that the news reports were broadcast with knowledge that they were false or with reckless regard for the truth.

Plaintiff characterizes himself as a private individual who has no decision or policy-making responsibilities and no duty to decide what is lawful and what is against the law and as one not in the public spotlight. Rather, he represents himself as one of 200 patrolmen whose duties include vehicular control of the city streets, responding to dispatcher calls to cover emergencies, and protecting the local citizenry. He also maintains that the killing of Garcia is not a matter of public interest.

The district court concluded that plaintiff is a public official within the meaning of *New York Times Co. v. Sullivan* [3] and within the meaning of *Gertz v. Robert Welch, Inc.* [4] *New York Times* established a qualified privilege for media defendants in defamation actions brought by public officials and required that a public official seeking to recover for libel with respect to his or her official conduct must prove that the statements were made with "actual malice." [5]

*Gertz* established further general criteria for determining what constitutes a "public figure." Public figures are viewed as being in either of two basic categories: (1) those persons who have attained special prominence in the affairs of society and thus assume a "public figure" role involuntarily; and (2) those persons who have thrust themselves to the forefront of public controversies in order to affect the outcome of those controversies. [6]

In order for the qualified privilege to be invoked, it is not necessary that one be a public figure for all purposes and at all times. The law recognizes public figures for limited purposes who are sometimes referred to as "vortex public figures" because although they are not pervasive public figures, such as actors and other prominent persons, they have voluntarily or involuntarily been injected into a specific controversy of public interest. [7]

Since *New York Times* was decided, numerous courts, both state and federal, have addressed the issue of whether police officers are public officials, and a goodly num-

3. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

4. 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

5. *New York Times,* 376 U.S. at 280–81, 84 S.Ct. at 726.

6. *Gertz,* 418 U.S. at 323, 345, 94 S.Ct. at 2997, 3009; *see also Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).

7. *Gertz,* 481 U.S. at 345, 351, 94 S.Ct. at 2997, 3009, 3012.

ber have concluded as a matter of law that they are.[8]

 In *Van Dyke v. KUTV*,[9] this Court applied the standard espoused in *New York Times* and in *Rosenblatt* for determining one's status as a public official and concluded (1) that the person must occupy a position which invites public scrutiny, and (2) that the alleged defamation must relate to the conduct of the person while in that capacity.

 In light of the particular facts of this case, we need not, and therefore do not, reach the issue of whether a police officer is *ipso facto* a public official. Here, plaintiff was or became a public official by virtue of the facts and circumstances which gave rise to the killing of Garcia. Contrary to plaintiff's contention, it is not to be said that his role in the killing of Garcia was that of a private individual, that he exercised no decision-making responsibility, or that he had no duty to decide what was lawful or against the law. The fact that plaintiff, acting in his capacity as a law enforcement officer, shot and killed a person he was attempting to apprehend propelled him into a category far-removed from that of an ordinary patrolman. One who takes a life under any circumstances cannot be expected to escape public scrutiny. *A fortiori*, a police officer who takes a life in the process of apprehending a suspect certainly cannot be expected to escape public scrutiny.

It is also undisputed that the alleged defamation only related to plaintiff's official conduct. All of the news reports focused only upon the propriety of plaintiff's official police conduct and his record as a law enforcement officer.

 The public clearly has a significant interest and concern in the use of deadly force by a peace officer and also in the work performance record of those entrusted to uphold the law. News accounts of the shooting incident that left a suspect dead at the hands of a police officer specifically relate to plaintiff's official conduct.

We therefore conclude that the trial court did not err in affording a qualified privilege to defendants.

Affirmed.

HOWE, Associate C.J., and DURHAM, STEWART and ZIMMERMAN, JJ., concur.

---

**8.** *E.g., St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Time, Inc. v. Pape*, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971), *reh'g denied*, 401 U.S. 1015, 91 S.Ct. 1248, 28 L.Ed.2d 552 (1971); *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill.2d 257, 239 N.E.2d 837 (1968); *Reed v. Northwestern Publishing Co.*, 124 Ill.2d 495, 125 Ill.Dec. 316, 530 N.E.2d 474 (1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1344, 103 L.Ed.2d 813 (1989);

*Gray v. Udevitz*, 656 F.2d 588 (10th Cir.1981); *Thuma v. Hearst Corp.*, 340 F.Supp. 867 (D.Md. 1972); *Smith v. Russell*, 456 So.2d 462 (Fla. 1984), *cert. denied*, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 782 (1985); *Roche v. Egan*, 433 A.2d 757 (Me.1981).

**9.** 663 P.2d 52 (Utah 1983).