**Jerry HAILEY, Appellant,**

v.

**KTBS, INC. and Advance Magazine Publishers, Inc. d/b/a Gentleman's Quarterly Magazine, Appellees.**

No. 06–96–00020–CV.

Court of Appeals of Texas, Texarkana.

Argued Oct. 1, 1996.

Decided Oct. 25, 1996.

Barry A. Bryant, Texarkana, for appellant.

Thomas Leatherberry, William H. Church, Jr., Vinson & Elkins, David C. Myers, Jackson & Walker, Dallas, James N. Haltom, Patton, Haltom, Roberts, Texarkana, for appellees.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

STARR, Justice.

This is a defamation case. The trial court granted summary judgment to appellee KTBS, Inc. (a television broadcaster) and

appellee Advance Magazine Publishers (publisher of *Gentlemen's Quarterly Magazine*). Appellant now appeals from the summary judgment upon the issue of defamation, as well as the denial of relief to appellant grounded upon intentional infliction of emotional distress.

On January 26, 1992, Gerri Faye Butts and her two daughters, ages eleven and three, were murdered in their home in Atlanta, Texas. Kevin Hailey, appellant's son, was arrested in connection with the murders, but was not indicted by a grand jury that was convened. During the investigation of the murders, the syndicated national television show "A Current Affair" produced two reports on the investigation, which were broadcast on appellee station KTBS, Inc. In addition, *Gentleman's Quarterly Magazine,* operated by appellee Advance Magazine Publishers, Inc., published a story about the investigation written by Melinda Henneberger, a free-lance reporter.

Jerry Hailey brought this suit alleging that the KTBS broadcasts and the *Gentleman's Quarterly* article made false and defamatory statements about him. The suit complains of the following statements from the broadcasts of "A Current Affair":

> The loved ones of Gerri Faye Butts and her two daughters cry out not only in grief, but in a scream for what they say is "junk justice" for this man, Kevin Hailey.
>
>  . . . .
>
> William Parker is a retired Dallas cop and was brought in as a Special Investigator for the Atlanta Police Department in a crime which friends of the victims alleged reeked of a fix because Kevin Hailey's father, Jerry Hailey, was a Deputy Sheriff at the time.
>
> Did I have reason to believe that Kevin Hailey's father intervened or became involved or effected [sic] the investigation of this case and I said yes I do have a reason.
>
>  . . . .
>
> Then they report that Hailey's father, the Deputy Sheriff, refused to let his son take a lie detector test.
>
>  . . . .

Kevin Hailey may have been cleared, but his father wasn't. He was fired as Deputy Sheriff for interfering in the investigation.

>  . . . .

Find out why they let the Sheriff's son off the hook.

>  . . . .

Parents come to their children's rescue for many of life's mistakes but in the case of Kevin Hailey his mistake may have been murder. And, his father's rescue got him fired. Kevin was the prime suspect in a triple murder and his father was a man of law, a local sheriff. Steve Dunleavy investigates how a father's badge may have saved Hailey from the life behind bars when he was let off the hook.

The suit complains of the following statements from the *Gentleman's Quarterly* article:

> But the people of Atlanta seem doubly disturbed by their near certainty that no son of a Cass County deputy will ever go on trial for murder, no matter how compelling the evidence.
>
> ... In a state notorious for overzealous prosecution, one local observer says the D.A.'s tender treatment of the deputy's son "is what we call serving him up a dish of home cookin'."
>
>  . . . .
>
> When Kevin was called in for questioning that evening, he agreed to take a lie-detector test too, until his father quickly vetoed the idea.
>
>  . . . .
>
> When word got out that Kevin was the leading suspect, Jerry Hailey threatened to sue the city, and town officials asked Scott to stop the investigation.
>
>  . . . .
>
> In the weeks following the hearing, Sheriff Paul Boone fired Jerry Hailey, saying his deputy had interfered with the murder investigation.

This suit was filed May 11, 1993. On July 20, 1995, after extensive discovery by both sides, KTBS and *Gentleman's Quarterly* moved for summary judgment on the following grounds: (1) the statements complained

of were either true statements of fact or were statements of opinion; (2) the statements were privileged under Tex.Civ.Prac. & Rem.Code Ann. § 73.002 (Vernon 1986) and therefore not valid grounds for a libel action; (3) Hailey was a public figure and had failed to offer any evidence of actual malice on the part of defendants; and (4) Hailey had failed to offer any evidence to support a cause of action for intentional infliction of emotional distress. KTBS also argued that the claim against it was barred by the wire service defense. On September 19, 1995, the court granted summary judgment to both defendants.

◼ In granting summary judgment in this case the trial judge did not specify or limit his ruling to any one or more of the particular grounds urged. To the contrary, the written order grants the summary judgment on all grounds urged in the motions. The trial judge sent a letter to the parties accompanying his summary judgment order, outlining some of the grounds on which he based his ruling. Only the written order, itself, and not the letter, is controlling on appeal. *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex.App.—Texarkana 1993, writ denied). We must therefore affirm the summary judgment if any of the theories advanced in the motions is meritorious. *See State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

Appellees contend the summary judgments should be affirmed because appellant failed to challenge several of the grounds urged in the motions for summary judgment. Briefing and reply points have been presented to us asserting that appellant has failed to meet his burden to overcome each and all of the four grounds upon which the motions for summary judgment were granted.

If appellant Jerry Hailey was a public official at the time of publication of the alleged defamations, he cannot recover in the absence of clear and convincing evidence that appellees made false and defamatory statements about him with actual malice. *Casso v. Brand*, 776 S.W.2d 551, 554 (Tex.1989). No evidence of malice was presented as a part of the summary judgment proof. Indeed, at oral arguments in this case counsel

for appellant informed the court that malice was not shown. We must make a decision, therefore, as to whether appellant Hailey was a "public official" within the meaning of *Casso, supra.*

In the case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court held that the First and Fourteenth Amendments to the United States Constitution require a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to the performance of official duties without clear and convincing proof that the statement was made with actual malice. In *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), the Supreme Court noted that in the *New York Times* case there was no occasion "to determine how far down into the lower ranks of government employees the 'public official' designation would extend for purposes of this rule, or otherwise to specify categories of persons who would or would not be included." In *Rosenblatt*, the Court stated at 383 U.S. at 85, 86 S.Ct. at 675–76:

There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.

*Rosenblatt* went on to hold that "it is for the trial judge in the first instance to determine whether the proofs show" that the individual is to be regarded as a "public official."

The inquiry concerning whether a plaintiff in a defamation suit is a "public official" was intensified by the case of *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In *Gertz*, the United

States Supreme Court held that it is not constitutionally required that courts apply the *New York Times* rule to defamation actions involving private individuals, even when such individuals were discussed because of matters of public concern. The distinction between public officials and private individuals became more sharply focused.

In *Bessent v. Times–Herald Printing Co.,* 709 S.W.2d 635 (Tex.1986), and *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729 (Tex.1985), the Supreme Court of Texas applied the *New York Times* rule to a summary judgment case, acknowledging *Gertz, supra.* These two Texas cases made summary judgments almost unobtainable in defamation cases. The summary judgment movant's burden of showing the absence of malice was unattainable. However, in *Casso, supra,* the Texas Supreme Court overruled *Bessent* and *Beaumont Enterprise* [as to their affidavit requirements] but declined to modify Texas summary judgment standards in order to establish a different summary judgment procedure for public figure defamation cases. The holding of the court was stated thusly, at page 554:

> We hold that Brand, as a public official, cannot recover unless he proves by clear and convincing evidence that Casso made false and defamatory statements about him with actual malice.

Accordingly, under the decisions of both the United States Supreme Court and the Supreme Court of Texas, in the absence of actual malice, appellant Hailey cannot make recovery against appellees herein if he is to be regarded as a "public official."

■ Law enforcement personnel are almost universally held to be "public officials." In the Texas case of *Times–Mirror Co. v. Harden,* 628 S.W.2d 859, 860 (Tex.App.—Eastland 1982, writ ref'd n.r.e.), it was stipulated between the parties that an undercover narcotics agent with the Texas Department of Public Safety was a "public official." In *Times Herald Printing Co. v. Bessent,* 601 S.W.2d 487, 489 (Tex.Civ.App.—Beaumont 1980, writ dism'd), an officer of the Department of Public Safety in charge of a narcotics squad in Dallas with four men under his supervision was held to be a "public official."

In 19 A.L.R.3d 1361 (1968), we find the following annotation by E.H. Schopler: "Libel and Slander: Who is a Public Official or Otherwise Within the Federal Constitutional Rule Requiring Public Officials to Show Actual Malice." Collated there are cases holding the following to be "public officials": a parish police captain and deputy sheriff, *Thompson v. St. Amant,* 184 So.2d 314 (La. Ct.App.1966); a police lieutenant, *Gilligan v. King,* 48 Misc.2d 212, 264 N.Y.S.2d 309 (1965); a deputy chief of detectives and lieutenant of the Chicago police, *Pape v. Time, Inc.,* 354 F.2d 558 (7th Cir.1965), *cert. denied,* 384 U.S. 909, 86 S.Ct. 1339, 16 L.Ed.2d 361 (1966); a sergeant of the Countryside police, *Suchomel v. Suburban Life Newspapers, Inc.,* 84 Ill.App.2d 239, 228 N.E.2d 172 (1967); the chief of police and the sheriff of a Kentucky city, *Ashton v. Commonwealth,* 405 S.W.2d 562 (Ky.1965), *rev'd on other grounds,* 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966); a Philadelphia police officer, *Coughlin v. Westinghouse Broadcasting & Cable, Inc.,* 780 F.2d 340 (3d Cir.1985); a Maryland state police sergeant, *Seymour v. A.S. Abell Co.,* 557 F.Supp. 951 (D.Md.1983); a captain of a county police force, *Thuma v. Hearst Corp.,* 340 F.Supp. 867 (D.Md.1972); a city police officer, *McKinley v. Baden,* 777 F.2d 1017 (5th Cir.1985); a state highway patrolman, *Roberts v. Dover,* 525 F.Supp. 987 (M.D.Tenn.1981); a federal drug enforcement agent, *Meiners v. Moriarity,* 563 F.2d 343 (7th Cir.1977); a deputy sheriff, *Karr v. Townsend,* 606 F.Supp. 1121 (W.D.Ark.1985); a city police officer, *Rattray v. National City,* 36 F.3d 1480 (9th Cir.1994); a policeman in a town of 30,000 people, *Gray v. Udevitz,* 656 F.2d 588 (10th Cir.1981); a sergeant on a city police force, *Rosales v. Eloy,* 122 Ariz. 134, 593 P.2d 688 (Ct.App.1979); a city traffic policeman, *Gomes v. Fried,* 136 Cal.App.3d 924, 186 Cal.Rptr. 605 (1982); a patrolman, *Moriarty v. Lippe,* 162 Conn. 371, 294 A.2d 326 (1972); a police sergeant, *Jackson v. Filliben,* 281 A.2d 604 (Del.1971); a city police officer, *Harrison v. Williams,* 430 So.2d 585 (Fla.Dist.Ct.App.1983); a city police officer, *Russell v. Smith,* 434 So.2d 342 (Fla.Dist.Ct.App.1983), *cert. denied,* 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 782 (1985);

a city chief of police, *Goolsby v. Wilson,* 146 Ga.App. 288, 246 S.E.2d 371 (1978); a police officer, *Pierce v. Pacific & Southern Co.,* 166 Ga.App. 113, 303 S.E.2d 316 (1983); a city police officer, *Sparks v. Thurmond,* 171 Ga. App. 138, 319 S.E.2d 46 (1984); a chief of police, *Miller v. Woods,* 180 Ga.App. 486, 349 S.E.2d 505 (1986); a patrolman performing ordinary and customary duties of a beat police officer, *Reed v. Northwestern Publishing Co.,* 124 Ill.2d 495, 125 Ill.Dec. 316, 530 N.E.2d 474 (1988), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 813 (1989); a city policeman, *Angelo v. Brenner,* 84 Ill. App.3d 594, 40 Ill.Dec. 337, 406 N.E.2d 38 (1980); a city police officer, *Fogus v. Capital Cities Media, Inc.,* 111 Ill.App.3d 1060, 67 Ill.Dec. 616, 444 N.E.2d 1100 (1982); a chief of police, *Moore v. Streit,* 181 Ill.App.3d 587, 130 Ill.Dec. 341, 537 N.E.2d 408 (1989); a person assigned to records and communications division of the Chicago police department, *Weber v. Woods,* 31 Ill.App.3d 122, 334 N.E.2d 857 (1975); an acting chief of police, *Kidder v. Anderson,* 345 So.2d 922 (La.Ct. App.1977); a detective in the town police department, *Roche v. Egan,* 433 A.2d 757 (Me.1981); a city police officer, *Tucci v. Guy Gannett Publishing Co.,* 464 A.2d 161 (Me. 1983); an officer on patrol, *Delia v. Berkey,* 41 Md.App. 47, 395 A.2d 1189 (1978); a deputy sheriff and police officers, *Hirman v. Rogers,* 257 N.W.2d 563 (Minn.1977); a detective captain of the Minneapolis police department, *Mahnke v. Northwest Publications, Inc.,* 280 Minn. 328, 160 N.W.2d 1 (1968); a highway patrolman, *NAACP v. Moody,* 350 So.2d 1365 (Miss.1977); a city police sergeant, *Ramacciotti v. Zinn,* 550 S.W.2d 217 (Mo.Ct.App. 1977); a small-town policeman, *Shafer v. Lamar Publishing Co.,* 621 S.W.2d 709 (Mo.Ct. App.1981); a deputy marshal in a village of some 1,000 people, *Rowden v. Amick,* 446 S.W.2d 849 (Mo.Ct.App.1969); a transit authority police officer, *Cibenko v. Worth Publishers, Inc.,* 510 F.Supp. 761 (D.N.J.1981); a police lieutenant who was not in charge on the night of an arrest reported in the defendant's newspaper but who would have been in charge at other times, *Costello v. Ocean County Observer,* 136 N.J. 594, 643 A.2d 1012 (1994); a police officer, *LaRocca v. New York News, Inc.,* 156 N.J.Super. 59, 383 A.2d 451 (App.Div.1978); a municipal policeman, *Scelfo v. Rutgers Univ.,* 116 N.J.Super. 403, 282 A.2d 445 (Law Div.1971); a deputy sheriff, *Ammerman v. Hubbard Broadcasting, Inc.,* 91 N.M. 250, 572 P.2d 1258 (Ct.App.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978); a patrolman, *Orr v. Lynch,* 60 A.D.2d 949, 401 N.Y.S.2d 897 (1978); a patrolman, *Malerba v. Newsday, Inc.,* 64 A.D.2d 623, 406 N.Y.S.2d 552 (1978); a police sergeant, *Scacchetti v. Gannett Co.,* 123 A.D.2d 497, 507 N.Y.S.2d 337 (1986); a village police officer, *Derrig v. Quinlan,* 125 A.D.2d 777, 508 N.Y.S.2d 952 (1986); a deputy sheriff, *Cline v. Brown,* 24 N.C.App. 209, 210 S.E.2d 446 (1974); a city police officer, *McNabb v. Oregonian Publishing Co.,* 69 Or.App. 136, 685 P.2d 458 (1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1193, 84 L.Ed.2d 339 (1985); an officer in a township police department, *Stickney v. Chester County Communications, Ltd.,* 361 Pa.Super. 166, 522 A.2d 66 (1987); a father who was a city police officer and son who was a special police officer, *Hall v. Rogers,* 490 A.2d 502 (R.I.1985); a police officer, *McClain v. Arnold,* 275 S.C. 282, 270 S.E.2d 124 (1980); a police officer, *Madsen v. United Television, Inc.,* 797 P.2d 1083 (Utah 1990); a police officer and detective, *Colombo v. Times–Argus Ass'n,* 135 Vt. 454, 380 A.2d 80 (1977); police officers, *Dixon v. Ogden Newspapers, Inc.,* 187 W.Va. 120, 416 S.E.2d 237 (1992); a municipal police sergeant, *Starr v. Beckley Newspapers Corp.,* 157 W.Va. 447, 201 S.E.2d 911 (1974); a · chief of police, *Pronger v. O'Dell,* 127 Wis.2d 292, 379 N.W.2d 330 (Ct. App.1985).

Under the great weight of authorities, we hold that, as a matter of law, appellant Hailey is to be regarded as a "public official" under the *New York Times* rule. In the absence of malice, as conceded by appellant, there can be no recovery for defamatory utterances.

■ In his second point, appellant complains of the denial of recovery for appellant's claim of intentional infliction of emotional distress. However, no cases are cited and no argument is presented in support of this point. Since any such recovery would necessarily be derived from the same defam-

atory utterances to which we have applied the *New York Times* rule, the same reasoning would preclude recovery for emotional distress.

We affirm the trial court's grant of summary judgments to KTBS, Inc. and Advance Magazine Publishers.